THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD WILLIAMS, Defendant-Appellant.

First District (3rd Division)    No. 1—01—0794

Opinion filed November 27, 2002.

Michael J. Pelletier and Tomas G. Gonzalez, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James

E. Fitzgerald, and Manny Magence, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

After a bench trial, defendant Bernard Williams was convicted of first degree murder and three counts of aggravated battery with a firearm. The trial judge sentenced him to a total of 80 years in prison: 50 years for murder and three consecutive prison terms of 10 years for each count of aggravated battery with a firearm.

The issue before us is whether the trial court was correct when it concluded it had to sentence the defendant to three consecutive terms. The answer depends on what the legislature meant when it used the words "severe bodily injury."

We conclude one of the three victims clearly suffered severe bodily injury at the hands of the defendant but that the record is insufficient for us to determine whether that was true of the other two. For that reason, we vacate two of the defendant's consecutive sentences and remand this cause to the trial court for a new sentencing hearing on those two counts.

FACTS

The State's evidence showed that around 4:30 p.m. on August 23, 1996, two men fired gunshots into a group of people gathered near a bar on Chicago's west side. Gary Thomas died as a result of the shooting. Three other people, Lucinda Birmingham, Crystal Pope, and Charles Mitchell, were wounded but survived. Defendant and codefendant DeAngelo Johnson were subsequently charged with the shootings.

At trial, Lucinda Birmingham testified that at the time of the shooting, she was on her way home from a liquor store. Birmingham said there were several people outside at that time. As Birmingham walked toward her house, she briefly stopped and talked to her friend Charles Mitchell. After parting, she heard "some noises." She was not sure what the noises were because she was "scratching off" a lottery ticket at the time and "wasn't really paying attention." After hearing the noises, Birmingham was about to run when she noticed that she had been shot in the leg. Birmingham fell over into a vacant lot, and then rolled over and crawled to the curb. According to Birmingham, the bullet struck her in her upper right thigh and came out through "the back part."

Birmingham further testified the paramedics eventually arrived to ascertain how many times she had been hit and whether the bullet had hit a blood vessel. According to Birmingham, the paramedics told

her she would have to wait about 20 minutes for an ambulance because there were other people who were more seriously injured. Birmingham testified that when the paramedics asked how she was doing, she stated that she "was feeling okay." An ambulance eventually arrived, and Birmingham was taken to the hospital where she waited about 30 to 45 minutes before getting assistance. According to Birmingham, the delay was due to the hospital personnel determining "that [she] wasn't really injured like the other pedestrians on the street." Birmingham said her wound eventually was treated, and she was at the hospital for a total of five or six hours.

Crystal Pope testified she was walking to the bus stop with her cousin before the shooting took place. As Pope crossed the street, her cousin told her she had been shot and that her arm was bleeding. She "didn't feel anything" initially. Pope fell, and her cousin dragged her back to the sidewalk. Her left arm was "bleeding and scraped like," and she was experiencing pain in the upper torso by her armpit. Pope's cousin left to call for help while Pope remained "in and out" of consciousness. Pope eventually was taken to the hospital where she underwent emergency surgery. She was hospitalized for a total of 19 days. Pope testified the bullet that entered her left arm still was lodged in the lower part of her spine at the time of trial.

Charles Mitchell testified he was standing in a vacant lot when he heard gunshots being fired. He then looked down at his pant leg and saw it had a hole in it. Mitchell then noticed his left leg was bleeding. He realized he had been shot. Mitchell ran home and talked to his mother, who told him to return to the scene so that he could be taken to the hospital. With the assistance of a friend, Mitchell returned to the scene of the shooting and waited for an ambulance for approximately 30 minutes. At the hospital, an X ray revealed that the bullet had gone through Mitchell's leg. The doctors cleaned the bullet wound and released Mitchell.

DECISION

We begin with some observations.

■ First, because improper imposition of consecutive sentences may violate a defendant's fundamental rights, we do not accept the State's invitation to find the issue has been waived by failure to preserve it in the trial court. See *People v. Durham*, 312 Ill. App. 3d 413, 420, 727 N.E.2d 623 (2000); *People v. Williams*, 263 Ill. App. 3d 1098, 1108, 638 N.E.2d 207 (1994). We will, however, grant great deference to the trial court's sentencing decision, and we will not substitute our judgment for that of the trial court unless we find an abuse of discretion. *People v. Jones*, 323 Ill. App. 3d 451, 460, 752 N.E.2d 51 (2001).

■ Second, we reject out of hand defendant's claim that his consecutive sentences were unconstitutional under the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Illinois Supreme Court has held *Apprendi* does not render consecutive sentences unconstitutional. *People v. Carney*, 196 Ill. 2d 518, 752 N.E.2d 1137 (2001); *People v. Wagener*, 196 Ill. 2d 269, 752 N.E.2d 430 (2001).

No additional testimony was taken at the sentencing hearing. No medical testimony or hospital records concerning the injuries were offered at trial. The trial court pronounced its sentences without making any findings or observations about the severity of the wounds suffered by the aggravated battery victims. The trial court did not say so, but we assume, as have the parties to this appeal, it sentenced the defendant under section 5—8—4(a) of the Unified Code of Corrections as it existed at the time of the offense, August 23, 1996—the single course of conduct provision. 730 ILCS 5/5—8—4(a) (West 1996).

■ The part of section 5—8—4(a) that applies here:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant *inflicted severe bodily injury*." (Emphasis added.) 730 ILCS 5/5—8—4(a) (West 1996).

In order to be a section 5—8—4(a) offense that triggers a consecutive sentence, the crime must involve " 'particularly serious invasions of the person.' " *People v. Curry*, 178 Ill. 2d 509, 538, 687 N.E.2d 877 (1997), quoting *People v. Toliver*, 251 Ill. App. 3d 1092, 1100 (1993). Hence, the requirement of "severe bodily injury."

The section of the aggravated battery with a firearm statute defendant was convicted of refers to a shooting that "(1) causes *any* injury to another person." (Emphasis added.) 720 ILCS 5/12—4.2(a)(1) (West 2000). Something else has to happen to require imposition of a consecutive sentence. That something else is the infliction of severe bodily harm.

Not all gunshot wounds are severe just because they are gunshot wounds. *People v. Austin*, 328 Ill. App. 3d 798, 808, 767 N.E.2d 433 (2002). We have to look at the extent of the harm done by the gunshot in the particular case. *Austin*, 328 Ill. App. 3d at 808.

■ We note the legislature chose the phrase "great bodily harm" when it enacted the aggravated battery statute (720 ILCS 5/12—4(a) (West 2000)), while it used "severe bodily injury" in section 5—8—4(a). Where the legislature uses certain words in one instance and dif-

ferent words in another, different results were intended. *People v. Russell*, 143 Ill. App. 3d 296, 303, 492 N.E.2d 960 (1986). Because "great bodily harm" defines an offense, while "severe bodily injury" mandates consecutive sentencing, we conclude "severe bodily injury" requires a degree of harm to the victim that is something more than that required to create the aggravated battery offense.

Several reported decisions deal with a determination of severe bodily injury for consecutive sentencing purposes, but many of them are marked by the problem we have here—a paucity of information.

Cases finding the existence of severe bodily injury include: *People v. Johnson*, 149 Ill. 2d 118, 594 N.E.2d 253 (1992) (victim shot in the shoulder, in the hospital the next day); *People v. Kelley*, 331 Ill. App. 3d 253, 770 N.E.2d 1130 (2002) (victim shot twice in the right arm, hospitalized for three days); *People v. Austin*, 328 Ill. App. 3d 798, 767 N.E.2d 433 (2002) (victim shot in the back and grazed on the side of the head near his left ear, injuries that required overnight hospitalization); *People v. Amaya*, 321 Ill. App. 3d 923, 748 N.E.2d 1251 (2001) (one victim shot in the stomach, the other in the back; both required surgery and a lengthy hospital stay, the bullet remaining in one victim at the time of trial); *People v. Primm*, 319 Ill. App. 3d 411, 745 N.E.2d 13 (2000) (victim shot in the back of his left thigh, taken to the hospital); *People v. Strader*, 278 Ill. App. 3d 876, 663 N.E.2d 511 (1996) (victim struck by three bullets from defendant's rifle, one of them removed surgically); *People v. Townes*, 94 Ill. App. 3d 850, 855, 419 N.E.2d 604 (1981) (victim's face was " 'beaten up,' " eye almost swollen closed, X rays ordered by doctors to investigate possible bone damage).

Cases finding a failure to prove severe bodily injury include: *People v. Jones*, 323 Ill. App. 3d 451, 752 N.E.2d 511 (2001) (bullet grazed victim's right cheek bone, receiving a band-aid from a doctor but no other medical attention); *People v. Rice*, 321 Ill. App. 3d 475, 747 N.E.2d 1035 (2001) (one bullet struck victim in the hand, another in the hip, taken to hospital where he remained for two days); *People v. Murray*, 312 Ill. App. 3d 685, 728 N.E.2d 512 (2000) (victim suffered gunshot wound to the right foot with an open fracture to the big toe, treated and released within 2½ hours after the shooting); *People v. Durham*, 312 Ill. App. 3d 413, 419, 727 N.E.2d 623 (2000) (victim's gunshot wound described as a mark, " 'like a small nick or cut' "); *People v. Ruiz*, 312 Ill. App. 3d 49, 726 N.E.2d 704 (2000) (victim police officer suffered gunshot wound to knee, wound barely visible, went to a meeting before seeking medical treatment); *In re T.G.*, 285 Ill. App. 3d 838, 674 N.E.2d 919 (1996) (not enough for "great bodily harm" under the aggravated battery statute where victim suffered

three stab wounds to the chest, felt only the first stab, had three bloody wounds).

There is no question in this case that Crystal Pope suffered a severe bodily injury. The gunshot wound to her left arm resulted in emergency surgery and a hospital stay of 19 days. The evidence concerning bullet wounds to Lucinda Birmingham and Charles Mitchell is problematic. Both were shot, no question about that. Birmingham was shot in the leg, the bullet coming out through "the back part" of her upper right thigh. Mitchell, too, was shot in the leg, the bullet going through. Neither received immediate medical attention. Birmingham was at the hospital for five or six hours, Mitchell being released right after doctors cleaned the wound.

It is true the trial judge is in the best position to determine the appropriate sentence, severity of injury being factual in nature. *Austin*, 328 Ill. App. 3d at 808. In this case, however, we do not know why the trial judge concluded consecutive sentences were required. We cannot know whether the trial judge abused his discretion unless we know that he exercised it.

■ We conclude the best course is to choose the approach taken by another division of this court in *People v. Craig*, 334 Ill. App. 3d 426 (2002). There, the shooting victim was shot under the right arm and in the chest and appeared to be in a great deal of pain. He drove himself to the hospital. There was no medical evidence concerning the injury. Consecutive sentences were imposed, apparently under section 5—8—4(a), although that was less than clear. The court vacated the defendant's consecutive sentences and remanded for a "great bodily harm versus severe bodily injury inquiry." *Craig*, 334 Ill. App. 3d at 448.

We do not intend to trivialize the injuries suffered by Birmingham and Mitchell. Any time a person is shot, no matter the extent of the harm, it is a serious matter. Then, again, consecutive sentencing is a serious matter, too. When justified, consecutive sentencing expresses society's revulsion for the offender's conduct—in effect, a statement that the offender must abandon hope for reentering normal society for some substantial length of time.

CONCLUSION

Because the defendant does not challenge his convictions, we affirm each conviction and we affirm the consecutive sentence imposed for the shooting of Crystal Pope, but we vacate the consecutive sentences imposed for the shootings of Lucinda Birmingham and

Charles Mitchell, and remand those matters to the trial court for further consideration.

Affirmed in part, vacated and remanded in part.

SOUTH, P.J., and HALL, J., concur.