# Illinois Official Reports

## Appellate Court

***People v. Ramirez*, 2015 IL App (1st) 130022**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL RAMIREZ, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0022 |
| Filed<br>Modified upon<br>denial of rehearing | April 22, 2015<br><br>May 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-14064; the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Alison L.S. Shah, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Monique Patton, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant-appellant Daniel Ramirez was convicted of four counts of attempted first degree murder and sentenced to four concurrent terms of 40 years in prison. On appeal, Ramirez contends that the trial court erred in imposing a sentence of 40 years because the court (1) improperly considered the use of a firearm when such use was already the subject of a mandatory firearm enhancement and (2) erroneously relied on a fact not in evidence–Ramirez's gang membership–in aggravation. Finding Ramirez's arguments forfeited, we affirm the judgment of the circuit court of Cook County. We further reject the State's contention that the trial court was required to sentence Ramirez to consecutive terms of imprisonment on each count of attempted first degree murder.

¶ 2                                    BACKGROUND

¶ 3    Because the issues raised on appeal relate only to Ramirez's sentence, we will limit our recitation of the facts to those relevant to the sentencing issues.

¶ 4    On August 9, 2011, around 3:30 p.m., shortly after the students at Sinclair High School in Chicago were dismissed, someone on the street fired multiple shots into a green van that was driving north on Paulina Street. Four young people were in the van and one of them, Rebecca Magana, a Sinclair student who had just been picked up after school, was shot in the arm. She was treated at the hospital and released but the bullet remained lodged in her arm.

¶ 5    Several days later, after two eyewitnesses identified Ramirez as the shooter in a photo array and one later identified him in a police lineup, Ramirez was arrested. He was ultimately charged with multiple counts of attempted first degree murder and one count of aggravated battery.

¶ 6    Witnesses at trial included the four occupants of the green van, the school principal, a student to whom the principal had been speaking when the shooting occurred, and a student who was in her mother's van parked on the street at the time of the shooting. Magana's boyfriend, Damien Garza, who was also in the green van, was a member of the Latin Saints street gang. A group of people standing on the corner of 50th Street and Paulina were members of either the Satan Disciples or the Gangster Disciples, both rivals of the Latin Saints.

¶ 7    According to witnesses, the people standing on the corner were flashing gang signs and both the people on the corner and the occupants of the green van were shouting gang-related phrases and slogans. One of the eyewitnesses, Christina Garay, testified that she observed a group of "gangbangers" standing on the corner as she walked to her mother's van. She knew they were "gangbangers" because she had seen them in her old neighborhood, and specifically recognized Ramirez, who was with the group, because she had known him since grammar school and used to live across the street from him.

¶ 8    Once Garay was inside her mother's van, someone from the group on the corner ran into the street and threw a basketball at the green van. Garay then saw someone give Ramirez a gun, and Ramirez ran into the street and fired multiple shots at the van. Ramirez was also identified as the shooter by Paulina Sanchez, the student who had been talking to the principal at the time of the shooting and who knew Ramirez prior to the shooting. Finally, Garza, who looked out the back window of the van, identified Ramirez as the person who chased the van and shot at it.

¶ 9 Garza testified that as the van drove past, the people standing on the corner were displaying the gang sign for the Satan Disciples.[1] They also shouted insults disrespecting the Latin Saints and Garza responded by shouting insults directed at the Satan Disciples. The individual in the passenger seat of the van, who was not a gang member himself, also responded by making hand gestures that were intended to disrespect the Disciples.

¶ 10 Ramirez testified that he was not a member of the Gangster Disciples. He was not asked at trial whether he was a member of the Satan Disciples or any other street gang.

¶ 11 The jury found Ramirez guilty of four counts of attempted first degree murder while armed with a firearm. Ramirez's motion for a new trial was denied. According to the presentence investigation report, Ramirez stated that he grew up in a neighborhood that had "a lot of gangs," but he had never belonged to or been affiliated with any gang. He also denied that any of his family members were in gangs. Ramirez reported that he had friends who were in "neighborhood gangs, La Raza."

¶ 12 At the sentencing hearing, the State argued in aggravation that Ramirez be sentenced to more than the minimum because he fired a gun multiple times outside of a school at dismissal time while students were in the area. The State also pointed out that if the court determined Magana suffered severe bodily injury, consecutive sentences would be required on the other attempted murder charges, but stated that "the State's position is 31 to life" and asked the court to sentence Ramirez appropriately "based on the egregious nature of the facts."

¶ 13 In mitigation, defense counsel acknowledged that the judge was bound by the 31-year minimum (a minimum of 6 years on attempted first degree murder plus the 25-year statutory firearm enhancement) but argued that Ramirez was 19 years old with no criminal background and could be a useful and productive citizen. Counsel asked the court to impose only the minimum sentence. Defense counsel noted "there's no question in my mind shooting a gun at that time of day and all the facts in this case are aggravating," but went on to argue that a minimum of 31 years was unconscionable even for a serious crime such as this because of Ramirez's age and lack of criminal background.

¶ 14 Ramirez addressed the court and said he knew he was not guilty and that 31 years was too much time. Ramirez stated that he knew he could be useful, go back into the community and work and have a family.

¶ 15 After noting that he had reviewed the presentence investigation report, the trial judge stated:

> "The most aggravating facts in the case are the facts. The defendant opens up with a gun on a van full of four other kids. And he's lucky that none of them died. *** It's also senseless. The defendant sits here and says he's not guilty which I certainly do not believe. These witnesses who came *** knew him. His identity is not an issue. The evidence was overwhelming. So he continues not to take responsibility for his actions. *** If he hadn't been involved in the gangs, he may very well have *** gotten a job, been a productive member of society."

---

[1] On cross-examination, Garza was questioned about the Latin Saints' rivalry with the Gangster Disciples and he answered without any reference to the Satan Disciples. Although the two names were sometimes used interchangeably, the principal testified that the Gangster Disciples and the Satan Disciples were two separate gangs in the neighborhood. At times, the witnesses simply referred to the gang members on the street as "Disciples."

The trial judge then explained that he did not believe a life sentence was warranted considering the fact that no one was killed. After considering all the factors, the trial judge found that the appropriate sentence was 15 years for attempted murder, plus the mandatory 25-year enhancement for the use of a firearm, for a total sentence of 40 years on each of the four counts. The judge further determined that the sentences for the four counts of attempted murder would be served concurrently.

¶ 16    At the conclusion of the sentencing hearing, defense counsel immediately presented his motion to reconsider the sentence, which he brought with him to the hearing. The written motion stated that the sentence was excessive in view of Ramirez's background and the court improperly considered in aggravation "matters that are implicit in the offense." Defense counsel requested that the court reduce the sentence from 40 years to the minimum of 31 years. In denying the motion to reconsider the sentence, the trial judge stated that the sentence was at the lower end of the statutory range and that he took into account the fact that nobody was killed, Ramirez's young age and his rehabilitative potential. Ramirez timely filed this appeal.

¶ 17                                                    ANALYSIS

¶ 18    The sole issue raised by Ramirez on appeal is whether the trial court erred in sentencing him to 15 years for attempted murder for a total of 40 years with the mandatory 25-year firearm enhancement. Ramirez contends that the trial court improperly considered the use of a firearm as a factor in aggravation when he had already received a mandatory enhanced sentence because a firearm was involved. Ramirez further claims that the trial court also considered his gang involvement as an aggravating factor when there was no evidence presented that he was a gang member.

¶ 19    The State contends and Ramirez acknowledges that the sentencing issue has been forfeited. It is well settled that an issue is preserved for appeal by objecting to the purported error at trial and including it in a written posttrial motion. *People v. Denson*, 2014 IL 116231, ¶ 11; *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). A defendant wishing to raise errors that occurred at sentencing must follow the same procedure, namely, object at the sentencing hearing and include the issues in a written motion to reconsider sentence, or risk forfeiture on appeal. *People v. Ballard*, 206 Ill. 2d 151, 192 (2002) (citing *People v. Mahaffey*, 166 Ill. 2d 1, 27 (1995)).

¶ 20    Here, Ramirez did not object to either purported error at the sentencing hearing and his motion to reconsider the sentence, which, as noted, was already prepared prior to the hearing, only raised the issue of improper consideration in aggravation of nonspecific "matters that are implicit in the offense." Therefore, both grounds raised in Ramirez's challenge to his sentence have been forfeited. Ramirez asks us to consider the error under the plain-error rule.

¶ 21    The plain-error doctrine is a narrow and limited exception to the rule of forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). A defendant may only obtain relief under this doctrine by first showing that a clear or obvious error occurred. *Id*. In the sentencing context, a defendant must then show that the evidence at the sentencing hearing was closely balanced or that the error was so egregious as to deny the defendant a fair sentencing hearing. *Id*.

¶ 22    The defendant bears the burden of persuasion and the procedural default will be honored if the defendant fails to meet that burden. *Id*. A defendant who fails to request plain-error review obviously cannot meet that burden. *Id*. Similarly, plain-error review is forfeited when a

defendant fails to present an argument on how either prong of the plain-error doctrine is satisfied. *Id*. at 545-46.

¶ 23 Here, although Ramirez asks this court to review the claimed sentencing errors for plain error, he does not expressly argue, much less develop the argument that either prong of the doctrine is satisfied. Instead, Ramirez merely asserts at the end of his brief that consideration of an improper sentencing factor is plain error, citing *People v. James*, 255 Ill. App. 3d 516 (1993). In *James*, this court noted that if a court relies on improper factors in aggravation when determining a defendant's sentence, the second prong of the plain-error doctrine could be implicated and thus, plain-error review is appropriate. *Id*. at 531.

¶ 24 Under the *Sprinkle* doctrine, the forfeiture rule may also be relaxed in certain circumstances, such as "when a trial judge oversteps his or her authority in the presence of the jury or when counsel has been effectively prevented from objecting because it would have fallen on deaf ears." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 612 (2010) (quoting *People v. Hanson*, 238 Ill. 2d 74, 118 (2010)). But this doctrine will only be applied to excuse the failure to preserve an error in extraordinary circumstances. *Id*. The forfeiture rule should be applied uniformly except in compelling situations "because failure to raise a claim properly denies the trial court an opportunity to correct an error or grant a new trial, thus wasting time and judicial resources." *Id*.

¶ 25 After careful consideration of the record and Ramirez's arguments on appeal, we conclude that Ramirez has forfeited plain-error review of his sentence and the *Sprinkle* doctrine does not apply. Ramirez devotes the majority of the argument section of his brief to explaining why he believes the trial court improperly considered factors in aggravation. In a single paragraph at the end of the brief, almost as an afterthought, Ramirez acknowledges he did not preserve the sentencing issue for review but asks this court to review it for plain error "because consideration of an improper sentencing factor is plain error." Ramirez then includes a citation to *James*, a case that merely stands for the proposition that consideration of an improper factor could implicate the second prong of the plain-error doctrine, but Ramirez does not explain why the alleged errors satisfy the second prong of plain error in this case.

¶ 26 Ramirez appears to be arguing that consideration of an improper factor always constitutes plain error under the second prong, with no citation to relevant authority. Our supreme court has noted that errors have satisfied the second prong only in a limited class of cases, *e.g.*, cases involving complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *Id*. at 609. "Structural errors are systemic, serving to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *Id*. at 608-09 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)).

¶ 27 We do not agree that the sentencing errors identified by Ramirez automatically constitute plain error under the second prong and we do not decide here whether in an appropriate case with argument supported by legal authority consideration of an improper aggravating factor could warrant plain error review under the second prong. But to accept Ramirez's argument (at least in its undeveloped form) would mean that whenever a defendant identifies any unpreserved sentencing error that he claims results in a longer sentence, the plain-error exception would swallow the rule of procedural default. We do no favors to the criminal bar to routinely bypass forfeiture to consider forfeited issues on their merits. Habitually excusing the

failure to preserve errors for review under the plain-error doctrine (i) minimizes the importance of trial counsel's vigilance to identify and preserve objections in order to facilitate appellate review, (ii) undermines the ability of trial courts to address and, if necessary, correct claimed errors, and (iii) results in an ever-growing body of largely hypothetical legal analysis, *i.e.*, *if* counsel had timely preserved the error now raised on appeal, *then* this is how we would resolve the issue. The more often we honor the rule of procedural default and the more frequently we confine plain-error review to its intentionally "narrow and limited" scope, the better and more cogent our analysis of concrete appellate issues will be.

¶ 28 Therefore, we decline to conduct a plain-error analysis. Ramirez has articulated no compelling reason to relax the forfeiture rule. No objection was made to the complained-of errors at the sentencing hearing, where the trial judge could have corrected the perceived errors. Ramirez advances no argument that calling his claimed sentencing errors to the trial judge's attention would have fallen on deaf ears. Ramirez's motion to reconsider sentence was prepared by defense counsel prior to the sentencing hearing and only referenced in generic language one of the errors he complains of on appeal. Coupled with Ramirez's failure to develop an argument on appeal as to how the alleged errors constitute structural error in the context of this case, we find that Ramirez has forfeited plain-error review of his sentence.

¶ 29 We next address the State's argument that the trial court erred in sentencing Ramirez to concurrent rather than consecutive sentences on the basis that Magana's injury was sufficient to constitute "severe bodily injury" within the meaning of section 5-8-4(d)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(1) (West 2010)). Section 5-8-4 first sets forth the general rule that when a court imposes multiple sentences at the same time, "the sentences shall run concurrently unless otherwise determined by the Illinois court under this Section." 730 ILCS 5/5-8-4(a) (West 2010). One of the exceptions to the general rule, subsection (d), mandates consecutive sentences under a number of circumstances, including when "[o]ne of the offenses for which the defendant was convicted was *** a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1) (West 2010). The State's position on appeal is that because the jury convicted Ramirez of attempted murder involving "great bodily harm" to Magana (a Class X felony), the provisions of subsection (d)(1) providing for mandatory consecutive sentences for Class X felonies involving "severe bodily injury" were triggered. And as clarified at oral argument, it is the State's position that in any case where a jury convicts a defendant of multiple offenses, one of which is a Class X or Class 1 felony involving great bodily harm, the jury's determination mandates the imposition of consecutive sentences, thus depriving the trial court of any discretion. We disagree.

¶ 30 Characterizing the trial court's failure to impose consecutive sentences as a "void" sentence, the States cites *People v. Arna*, 168 Ill. 2d 107, 113 (1995), for the proposition that this court has the authority to correct a void sentence at any time, notwithstanding rules which limit the State's right to appeal and prohibit this court from increasing a defendant's sentence on review. The State's contention that Ramirez's concurrent sentences are void rests on the supposition that the difference between "great bodily harm" and "severe bodily injury" is "merely semantic" and that there is "no meaningful distinction" between the two phrases. See *People v. Witherspoon*, 379 Ill. App. 3d 298, 308 (2008). And while that is arguably true from a purely grammatical perspective, the role that each of these phrases plays in a criminal proceeding makes clear that they are, and were intended to be, entirely distinct concepts.

¶ 31    The State's argument is premised on a fundamental mischaracterization of the fact finder's function in determining that an offense involves "great bodily harm" for purposes of a sentencing enhancement as opposed to a sentencing judge's role in determining whether the qualifying felony entails "severe bodily injury" so that departure from the legislature's general mandate of concurrent sentences is warranted. Both of these determinations are entitled to deference on review (see *People v. Lopez-Bonilla*, 2011 IL App (2d) 100688, ¶ 14 ("as long as the evidence was sufficient to support a finding of great bodily harm, the trial court's determination will be affirmed"); *People v. Deleon*, 227 Ill. 2d 322, 332 (2008) ("trial court's determination that a bodily injury is 'severe' for purposes of consecutive sentencing may be reversed only if it is against the manifest weight of the evidence")), and they involve distinct considerations. As we noted in *People v. Williams*, 335 Ill. App. 3d 596, 599-600 (2002):

> "[T]he legislature chose the phrase 'great bodily harm' when it enacted the aggravated battery statute [citation], while it used 'severe bodily injury' in section 5-8-4(a). Where the legislature uses certain words in one instance and different words in another, different results were intended. [Citation.] Because 'great bodily harm' defines an offense, while 'severe bodily injury' mandates consecutive sentencing, we conclude 'severe bodily injury' requires a degree of harm to the victim that is something more than that required to create the aggravated battery offense."

¶ 32    Similarly, had the legislature intended that a determination that an attempted murder that inflicted great bodily harm on the victim would, without more, mandate the imposition of consecutive sentences, it could easily have so provided. Given the clear expression of legislative intent that concurrent rather than consecutive sentences are the norm, to sweep all cases involving great bodily harm into the severe bodily injury category would greatly increase the number of defendants subject to mandatory consecutive sentences, a result we cannot harmonize with the general policy favoring concurrent sentences.

¶ 33    *Witherspoon* is not inconsistent with this conclusion. The court in *Witherspoon* affirmed the trial court's finding that the injuries sustained by the victim entailed "severe bodily injury" and that consecutive sentences were therefore warranted. The court did not conclude that because "great bodily harm" and "severe bodily injury" were grammatically similar, a finding that an offense inflicted great bodily harm necessarily called for a finding that it likewise entailed severe bodily injury. Rather, the *Witherspoon* court found that the trial court did not abuse its discretion when it deferred to the jury's finding of great bodily harm as a basis for concluding that the victim sustained severe bodily injury. *Witherspoon*, 379 Ill. App. 3d at 308. Recognizing the deference afforded the trial court's decision regarding the imposition of consecutive sentences, *Witherspoon* further observed that cataloging cases in an attempt to classify which injuries are severe enough to warrant consecutive sentences was not particularly helpful: "[j]ust because the appellate court found no abuse of discretion in the finding that a particular injury was not severe, it does not follow that the opposite finding would have been an abuse of discretion either. Both findings could have been rationally defensible." *Id.* at 310. *Witherspoon* is entirely consistent with the conclusion we reach here that notwithstanding a factual finding that a qualifying offense inflicts great bodily harm, the trial court retains the discretion to determine separately whether defendant inflicted severe bodily injury for the purpose of imposing consecutive sentences.

¶ 34    The record reflects that the State raised this issue at sentencing and thus the trial court was aware of the State's position that Magana's injury constituted "severe bodily injury"

warranting consecutive sentences. The trial court's decision to impose concurrent sentences reflects its determination that although Magana sustained "great bodily harm" in that she suffered a piercing bullet wound to her arm, the nature of her injury was not so severe as to warrant consecutive 40-year sentences for each of the attempted murders of which Ramirez was convicted, particularly since none of the other victims was injured. See *Williams*, 335 Ill. App. 3d at 599 ("Not all gunshot wounds are severe just because they are gunshot wounds."). The evidence at trial showed that although the bullet could not be removed, Magana was treated at the hospital following the shooting and released that same day. This supports the trial court's apparent conclusion that although the injury was sufficient to constitute great bodily harm for purposes of the firearm enhancement, it was insufficient to constitute severe bodily injury for the purpose of imposing consecutive sentences. We therefore reject the State's argument that consecutive sentences were mandatory.

¶ 35    Ramirez also contends and the State concedes that he is entitled to 31 additional days of presentence credit for a total of 458 days rather than 427. Pursuant to Illinois Supreme Court Rule 615(b)(1), and our authority to correct a mittimus without remand (*People v. Magee*, 374 Ill. App. 3d 1024, 1035-36 (2007)), we direct the clerk of the circuit court to correct the mittimus to reflect 458 days of presentence credit.

¶ 36                                    CONCLUSION
¶ 37    For the foregoing reasons, the judgment of the circuit court is affirmed. The clerk of the circuit court is directed to correct the mittimus to reflect 458 days of presentence credit.

¶ 38    Affirmed; mittimus corrected.