# Illinois Official Reports

## Appellate Court

---

### *People v. Alvarez*, 2016 IL App (2d) 140364

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE ALVAREZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0364 |
| Filed | June 20, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-CF-2260; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Steven E. Wiltgen, all of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, defendant, Jesse Alvarez, was convicted of five counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)), two counts of aggravated battery with a firearm (720 ILCS 5/12-4.2(a) (West 2008)), and one count of armed violence (720 ILCS 5/33A-2(a) (West 2008)). The trial court sentenced defendant to a total of 88 years' imprisonment on the five attempted first degree murder convictions. For two of those convictions, the court determined that consecutive sentencing was mandatory pursuant to section 5-8-4(d)(1) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(d)(1) (West 2008)).

¶ 2 On appeal, defendant challenges the portions of the sentencing orders that required consecutive sentences as to the convictions of attempted first degree murder. He contends that the court erred in imposing the consecutive sentences, because the evidence was insufficient to support a finding that he inflicted severe bodily injury on the victim, Alexander Carrera, during the commission of attempted first degree murder as charged in counts I and II. We affirm in part, vacate in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was charged in an eight-count indictment with five counts of attempted first degree murder (counts I through V), two counts of aggravated battery with a firearm (counts VI and VII), and one count of armed violence based on criminal damage to property (count VIII). Pertinent to this appeal, count I alleged attempted first degree murder in that defendant personally discharged a firearm causing great bodily harm, permanent disability, or permanent disfigurement to Carrera by shooting him in the hip area. Count II alleged attempted first degree murder in that defendant personally discharged a firearm causing great bodily harm, permanent disability, or permanent disfigurement to Carrera by shooting him in the thigh. Counts III, IV, and V alleged attempted first degree murder in that defendant fired three other shots in Carrera's direction, but those shots did not hit him.

¶ 5 Defendant's bench trial commenced in September 2013. The State's first witness, Samuel Sosa, testified that he and defendant were both members of the Latin Kings in Aurora, Illinois. The shooting took place on July 1, 2009; before that date, Sosa had possession of a Latin Kings "nation's gun," a .45-caliber semi-automatic handgun. Sosa had observed that this gun was loaded with seven or eight rounds, which included a mix of standard rounds and what Sosa described as "shotgun rounds." Sosa gave this gun to defendant "a couple days" before July 1, 2009. After July 1, 2009, defendant returned the gun to Sosa, saying that he had used the gun to shoot a "Maniac" (Maniac Latin Disciple) in the back of the leg.

¶ 6 Azael Ramirez, another member of the Latin Kings, testified that he had seen the gun before July 1, 2009, and had been sufficiently curious about the nonstandard rounds to empty the gun's magazine to look at them. He testified that the magazine contained eight rounds, four of which were the nonstandard ones containing shot. When he finished looking at the rounds, he reloaded the magazine, alternating the standard rounds and the shot rounds. After the shooting, defendant came to Ramirez and spoke with him. Defendant said that Carrera was trying to go back into his house when defendant started firing.

¶ 7        Carrera testified that he was at his house on the night of July 1, 2009, when he went outside to throw away a cigarette. He then noticed that someone, whom he later identified as defendant, was standing about 20 feet away at the bottom of the steps, his arms concealed behind him. Defendant asked, "What do you claim, dog?"—meaning, "State your gang affiliation." Defendant's question and posture prompted Carrera to turn around to try to run back into his house. Defendant fired multiple shots at Carrera, hitting him twice, once in the upper thigh and once near his knee. He felt a sting and fell to the floor, where he stayed until the police arrived. (An Aurora police officer, who was the first person to respond to the scene of the shooting, testified that Carrera walked out of the house when he arrived. However, the officer called an ambulance after seeing blood on Carrera's leg.)

¶ 8        Carrera further testified that, in the period between the July 2009 shooting and the September 2013 trial, he had felt occasional pain in his leg during cold weather. This most recently happened two winters before the trial. He described the injury to his knee as a bullet graze. He also identified photographs showing his upper leg with numerous small wounds and his knee with a small wound. Some bullet fragments initially remained in the wounds; some came out on their own on the day of the shooting, and others fell out later. He believed that the last fragment came out after four or five months. Carrera testified that he had scars from the wounds, but he did not specify where. He also identified photographs showing firearm damage to his house.

¶ 9        On cross-examination, Carrera testified that he had an unrelated "altercation" with a 12-year-old boy before the July 1, 2009, shooting. During that altercation, the 12-year-old boy shot at Carrera with a BB gun, striking him in the leg. In response to the State's objection to that line of questioning, defense counsel responded that he was attempting to prove that the BB gun shot was the source of Carrera's injuries.

¶ 10       The parties entered into a stipulation concerning Carrera's medical treatment, as follows:

"1. That on July 1, 2009, Alexander Carrera was admitted at approximately 12:59 A.M. and was treated in the emergency department of Provena Mercy Center hospital.

2. That ***Alexander Carrera was treated for puncture wounds to the upper left hip and thigh, and the lower left leg areas ***.

3. That *** the damage to Alexander Carrera's upper hip and left thigh area were approximately 20, 2x2 mm wounds in a cluster at the left hip and thigh area that resembled a shotgun pattern.

4. That x-rays of Carrera's upper left hip and buttock region showed multiple rounded metallic bullet fragments/buck shot fragments that are compatible with a gunshot injury. A few metallic bullet fragments clearly identified within the anterior subcutaneous tissues.

5. That x-rays of Carrera's left hip showed two metallic densities which project over the left lower side of the abdomen that are compatible with a gunshot wound injury.

6. There were also two metallic densities which project in the medial tissues about the left knee joint compatible with a gunshot wound injury.

7. That Alexander Carrera was treated and released from Provena Mercy Center hospital approximately 8:10 A.M. on July 1, 2009 with the instructions to clean the

wounds three times a day with soap and water, apply bacitracin, and return if there are any signs of infection."

¶ 11    Defendant rested without presenting evidence.

¶ 12    In its ruling, the court found defendant guilty on all eight counts. As to counts I and II, the court specifically found that the State proved beyond a reasonable doubt that defendant had caused "great bodily harm and permanent disfigurement" to Carrera, thereby requiring a 25-year enhancement to any sentence imposed on each of those counts (720 ILCS 5/8-4(c)(1)(D) (West 2008)). Additionally, because of the "seriousness of the victim's injuries," the court rejected defendant's suggestion that the injury to Carrera's knee area might have been the result of the shot from the BB gun. The court made no other findings as to the extent of Carrera's injuries, and it did not make a finding as to whether Carrera suffered "severe bodily injury."

¶ 13    At the subsequent sentencing hearing, the State argued that, because the court had made a finding of "severe bodily harm," the sentences for counts I and II had to be served consecutively. Defendant did not dispute the State's assertion that the court had made that finding, nor did he attempt to explain that the proper finding needed for the imposition of consecutive sentences was "severe bodily *injury*," not "harm."

¶ 14    Before imposing the sentences, the court stated that, "*as previously found*" (emphasis added), defendant had personally discharged a firearm and the resulting injuries constituted severe bodily injury to Carrera. It ruled that consecutive sentences were thus mandatory pursuant to section 5-8-4(d)(1) of the Code. The court sentenced defendant to 31 years' imprisonment on count I, to be served consecutively to 31 years' imprisonment on count II. Both sentences included 25-year enhancements. The court imposed a 26-year sentence on each of counts III, IV, and V, which were to run concurrently with one another but consecutively to the sentences on counts I and II. The court determined that counts VI, VII, and VIII (two counts of aggravated battery with a firearm and one count of armed violence) merged into the attempted first degree murder counts. Defendant did not file a postsentencing motion, but he filed a timely notice of appeal.

¶ 15                                  II. ANALYSIS

¶ 16    Defendant argues that the court erred in imposing consecutive sentences on counts I and II. The State responds that defendant forfeited the issue by failing to object before the trial court to the imposition of consecutive sentences. Defendant concedes that he did not raise the issue below, but he argues that we should review the issue nonetheless.

¶ 17    To properly preserve an issue for appellate review, a party must raise the issue both at trial and in a posttrial motion. *People v. Durham*, 312 Ill. App. 3d 413, 420 (2000). The improper imposition of consecutive sentences, however, might violate a defendant's fundamental rights. *Durham*, 312 Ill. App. 3d at 420. Thus, we may review the issue to determine whether the imposition of consecutive sentences constitutes plain error. *Durham*, 312 Ill. App. 3d at 420; see also Ill. S. Ct. R. 615(a) ("[D]efects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 18    As a general rule, when a court imposes multiple sentences at the same time, the sentences must run concurrently. 730 ILCS 5-8-4(a) (West 2008). An exception to that rule can be found in section 5-8-4(d)(1) of the Code, which mandates consecutive sentencing when a defendant

has been convicted of a Class X felony and inflicted "severe bodily injury" during the commission of that felony. 730 ILCS 5/5-8-4(d)(1) (West 2008). If a defendant's convictions bring him or her within the purview of that exception, consecutive sentences must be imposed. *People v. Stanford*, 2011 IL App (2d) 090420, ¶ 47.

¶ 19     As a preliminary matter, we must determine the appropriate standard of review of a trial court's determination that a bodily injury is "severe" for consecutive-sentencing purposes. Defendant suggests that this is a matter of statutory interpretation and that thus the standard of review is *de novo*. Our supreme court in *People v. Deleon*, 227 Ill. 2d 322 (2008), however, rejected that argument. *Deleon*, 227 Ill. 2d at 331-32. Whether a particular injury is "severe" is a question of fact, and thus the manifest-weight standard is appropriate. *Deleon*, 227 Ill. 2d at 332. Accordingly, a trial court's determination that an injury is severe for purposes of consecutive sentencing may be reversed only if it is against the manifest weight of the evidence. *Deleon*, 227 Ill. 2d at 332. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on the evidence presented. *Deleon*, 227 Ill. 2d at 332.

¶ 20     Here, the court initially found that the State proved beyond a reasonable doubt that defendant committed attempted first degree murder and caused "great bodily harm and permanent disfigurement" to Carrera by shooting him in the hip and knee. At the sentencing hearing, the court stated that, "as previously found," defendant had inflicted "severe bodily injury" on Carrera, thus requiring consecutive sentences pursuant to section 5-8-4(d)(1) of the Code. The court, however, had never made an explicit finding that Carrera's injuries constituted severe bodily injury.

¶ 21     Defendant contends that, although the trial court found that he caused "great bodily harm and permanent disfigurement," those findings were insufficient to support a finding of severe bodily injury under section 5-8-4(d)(1) for purposes of consecutive sentencing, because they are two different standards.

¶ 22     The State responds that we should uphold the trial court's imposition of consecutive sentences, because there is no practical difference between the terms "great bodily harm" and "severe bodily injury." We disagree. The State relies on *People v. Witherspoon*, 379 Ill. App. 3d 298 (2008), where the trial court deferred to the jury's finding of great bodily harm as the basis for concluding that the victim sustained severe bodily injury, thus requiring the imposition of consecutive sentences. *Witherspoon*, 379 Ill. App. 3d at 303-04, 308. The Fourth District Appellate Court upheld the trial court's imposition of consecutive sentences. *Witherspoon*, 379 Ill. App. 3d at 310. The court reasoned that the "difference between 'great bodily harm' and 'severe bodily injury' is merely semantic; no meaningful distinction can be made between 'great' and 'severe' or between 'harm' and 'injury.' " *Witherspoon*, 379 Ill. App. 3d at 308.

¶ 23     We instead find persuasive the analysis in *People v. Williams*, 335 Ill. App. 3d 596 (2002), in which the First District noted that the use of the two different terms "great bodily harm" and "severe bodily injury" was intended by the legislature to achieve different results. *Williams*, 335 Ill. App. 3d at 599-600; see also *People v. Russell*, 143 Ill. App. 3d 296, 303 (1986) ("One of the canons of statutory construction is that where the legislature uses certain words in one instance and different words in another, different results were intended."). Specifically, the legislature chose to use the phrase "great bodily harm" in defining the offense of aggravated battery, while it used "severe bodily injury" in section 5-8-4. See *Williams*, 335 Ill. App. 3d at

600. The *Williams* court explained: "[b]ecause 'great bodily harm' defines an offense, while 'severe bodily injury' mandates consecutive sentencing, we conclude 'severe bodily injury' requires a degree of harm to the victim that is something more than that required to create the aggravated battery offense." *Williams*, 335 Ill. App. 3d at 600.

¶ 24 Similarly, these two concepts involve distinct considerations as they pertain to attempted first degree murder convictions. A finding of either is entitled to deference on review; however, whether a defendant inflicted "great bodily harm" determines whether a sentencing enhancement applies (see 720 ILCS 5/8-4(c)(1)(D) (West 2008)), whereas whether a qualifying offense resulted in "severe bodily injury" determines whether sentences must be consecutive (see 730 ILCS 5/5-8-4(d)(1) (West 2008)). Simply stated, we cannot agree with the suggestion in *Witherspoon* that there is no practical difference between these terms. A finding of "great bodily harm" does not necessarily or automatically result in a finding of "severe bodily injury" for purposes of consecutive sentencing. Had the legislature intended such a result, it could have so provided. See *Williams*, 335 Ill. App. 3d at 599-600 ("Where the legislature uses certain words in one instance and different words in another, different results were intended."). Thus, without the trial court's explicit finding of "severe bodily injury," we decline to uphold the imposition of consecutive sentences pursuant to section 5-8-4(d)(1) of the Code solely on its finding of "great bodily injury" in connection with a sentencing enhancement.

¶ 25 Defendant suggests that we should simply modify his sentences to make them run concurrently, but we must instead vacate the portions of the trial court's sentencing orders that imposed consecutive sentences and remand for reconsideration of whether consecutive sentences should be imposed.

¶ 26 *Williams* is again instructive. In *Williams*, the defendant was convicted of first degree murder and three counts of aggravated battery with a firearm. *Williams*, 335 Ill. App. 3d at 597. The trial court imposed consecutive sentences on the counts of aggravated battery with a firearm, but it did so without making any findings or observations about the severity of the wounds suffered by the victims. *Williams*, 335 Ill. App. 3d at 597, 599. The appellate court noted that there was "no question" that one victim suffered severe bodily injury where the gunshot wound to her arm resulted in emergency surgery and a hospital stay of 19 days. *Williams*, 335 Ill. App. 3d at 601. The other two victims, however, suffered gunshot wounds to their legs but did not receive immediate medical attention; one victim spent five or six hours at the hospital, and the other was released immediately after being treated. *Williams*, 335 Ill. App. 3d at 601. Since the trial court made no factual findings as to those victims, the consecutive sentences imposed on those convictions were vacated and the case remanded for a "great bodily harm [v.] severe bodily injury inquiry." *Williams*, 335 Ill. App. 3d at 601.

¶ 27 As in *Williams*, the trial court did not make any findings or observations about the severity of Carrera's wounds. Although the court stated that it had "previously found" that Carrera's injuries constituted severe bodily injury, it had never actually made such a finding. Instead, besides finding "great bodily harm," the court had merely commented that it considered the "seriousness of the victim's injuries" in rejecting defendant's argument that the injuries occurred when Carrera was shot by a BB gun. This isolated comment about the "seriousness" of Carrera's injuries cannot serve as the basis for upholding the court's imposition of consecutive sentences.

¶ 28 Without findings to review, we must not engage in our own assessment of the facts and the evidence to determine whether consecutive sentences were required under section 5-8-4(d)(1) of the Code. See *Deleon*, 227 Ill. 2d at 332 (a reviewing court will "give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses," and it "will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn"); *Williams*, 335 Ill. App. 3d at 601 ("It is true the trial judge is in the best position to determine the appropriate sentence, severity of injury being factual in nature.").[1]

¶ 29 Because the trial court failed to actually make the requisite findings of severe bodily injury before imposing consecutive sentences, we vacate the imposition of consecutive sentences on counts I and II, as well as the court's judgment requiring the concurrent sentences on counts III, IV, and V to be served consecutively to counts I and II. We remand the matter to the trial court. Specifically, on remand, the trial court shall determine whether defendant inflicted "severe bodily injury" during the commission of the offenses charged in counts I and II, so as to require the imposition of consecutive sentences pursuant to section 5-8-4(d)(1).

¶ 30                                                III. CONCLUSION

¶ 31 As defendant does not challenge any of his eight convictions or the length of his sentence on any of the individual counts, we affirm each conviction and the length of each sentence. We vacate the trial court's judgment only to the extent that the court ordered certain of defendant's sentences to be served consecutively, and we remand the matter for a determination on that aspect of defendant's sentences.

¶ 32 Affirmed in part and vacated in part; cause remanded.

---

[1]*People v. Bailey*, 2013 IL 113690, is also instructive. Although that case did not involve a determination of severe bodily injury for consecutive-sentencing purposes, the court held that it was not the proper role of the reviewing court to make a finding that a murder was exceptionally brutal and heinous so as to warrant a natural life sentence, even though the evidence might have supported such a finding. *Bailey*, 2013 IL 113690, ¶¶ 31-35.