2026 IL App (1st) 241358-U

No. 1-24-1358

Filed February 18, 2026

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 13627 |
| | ) | |
| RAYMOND DANIELS, | ) | Honorable |
| | ) | Nicholas Kantas, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*: Postconviction petition failed to state an arguable claim, as defendant was not prejudiced by appellate counsel's failure to challenge the trial court's imposition of consecutive sentences.

¶ 2   Raymond Daniels appeals the circuit court's summary dismissal of his petition for postconviction relief. We affirm.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4         After a bench trial, Daniels was convicted of two counts of attempted first degree murder and one count of home invasion. He was sentenced to consecutive terms of 40 years for each attempted murder and a 37-year term for home invasion, totaling 117 years. Each sentence included a 25-year enhancement for personal discharge of a firearm causing great bodily harm. The evidence presented at Daniels's trial was recounted in the order affirming his conviction and sentence on direct appeal and need not be repeated in detail. See *People v. Daniels*, 2011 IL App (1st) 100249-U (unpublished order under Illinois Supreme Court Rule 23).

¶ 5         The State established that Daniels kicked in the door to the Campbell family's home in Chicago on the afternoon of June 15, 2008. After entering, he fired multiple shots, striking Floyd Campbell and Terrell Smith. Campbell sustained gunshots wounds to his abdomen and shoulder. He spent five days in the hospital where he was treated for internal bleeding and underwent surgery on his arm. Smith was shot in his arm, back, and hip. He spent six days in the hospital and underwent surgery. He has permanent screws in his hip.

¶ 6         When the trial court found Daniels guilty, it noted that Daniels "fired the shots that struck both Floyd Campbell and Terrell Smith," and both men sustained "extensive injuries." The court also stated that Daniels had personally discharged a firearm.

¶ 7         At the sentencing hearing, the State argued consecutive sentences were mandatory under section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2008)) since Campbell and Floyd suffered severe bodily injuries. In addition, the State insisted 25-year enhancements were mandatory since the court had found Daniels personally discharged a firearm causing great

bodily harm. Defense counsel implicitly conceded these points by noting the minimum sentence was 93 years.[2]

¶ 8      In announcing the sentence, the court remarked that the "[t]wo victims were severely hurt *** they had severe injuries as a result of these gunshots." As to both attempted first degree murder counts, the court imposed prison terms of 15 years plus 25 years based on its finding that Daniels "personally discharged a firearm that proximately caused great bodily harm" to each victim. The court stated the sentences would be "served consecutively, and 85 percent for each sentence based on the statute." On the home invasion count, the court imposed a consecutive 12-year term plus a 25-year firearm enhancement.

¶ 9      On direct appeal, Daniels raised several issues regarding his conviction and sentence. As to his sentence, Daniels argued the firearm enhancement statute was either facially unconstitutional or unconstitutional as applied to him. We rejected his arguments and affirmed his conviction and sentence. *Daniels*, 2011 IL App (1st) 100249-U.

¶ 10      In 2024, Daniels filed a *pro se* postconviction petition. He argued: (1) the firearm enhancements were improperly imposed since they were not included in the charging instrument and trial counsel was ineffective for failing to raise this issue; (2) the trial court improperly considered factors inherent in the offense in aggravation at sentencing; (3) the trial court improperly relied on "great bodily harm" to impose consecutive sentences; and (4) trial counsel was ineffective for failing to object to consecutive sentencing and appellate counsel was ineffective for failing to raise this issue on appeal. The circuit court issued a written order summarily dismissing the petition. Daniels appeals.

---

[2]The minimum term for each offense was 6 years, 31 with the 25-year enhancement. Three 31-year terms, served consecutively, would be 93 years.

¶ 11                                    II. ANALYSIS

¶ 12          The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2024)) provides a mechanism for criminal defendants to challenge their conviction or sentence on constitutional grounds. *People v. Clark*, 2023 IL 127273, ¶ 38. Proceedings under the Act are not a continuation of or an addendum to a direct appeal, but a collateral action to examine issues that were not and could not have been determined on direct appeal. *Id.*

¶ 13          The Act contemplates three stages. *People v. Johnson*, 2021 IL 125738, ¶ 24. At the first stage, the circuit court reviews the petition independently to determine whether it is frivolous or patently without merit. *Id*. If so, the court must summarily dismiss the petition by written order, specifying the reasons for its decision. *Id*.; 725 ILCS 5/122-2.1(a)(2) (West 2024). But, if the court determines that the petition alleges sufficient facts to state the gist of a constitutional claim—that is, a claim with an arguable basis in law or fact—the petition must be advanced to the second stage where counsel may be appointed to assist and amend the petition as necessary. *Id*. ¶¶ 26-27.

¶ 14          Our review of a circuit court's first stage dismissal of a postconviction petition is *de novo*. *Id*. ¶ 28. We review the judgment, not the court's reasoning. *Id*. First stage screening of a petition is considered a low threshold. *Id*. ¶ 25. We accept as true and liberally construe all allegations unless contradicted by the record. *Id*. We will find that a petition lacks an arguable basis in law or fact if it is " 'based on an indisputably meritless legal theory or a fanciful factual allegation.' " *Id*. ¶ 26 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)).

¶ 15          On appeal, Daniels contends his petition made an arguable claim that both his trial and appellate counsel were ineffective by failing to challenge the trial court's imposition of consecutive sentences. He alleges they should have argued consecutive sentences could not be imposed because the court had not made the requisite finding that Daniels inflicted serious bodily injury.

¶ 16    At the outset, we observe that Daniels's claim regarding trial counsel, by itself, does not warrant further consideration. This issue and trial counsel's conduct appeared in the trial record and, therefore, the claim could have been asserted on direct appeal. Claims that could have been raised on direct appeal may be dismissed at the first stage. *People v. Blair*, 215 Ill. 2d 427, 446 (2005). The claim is cognizable, however, since Daniels also alleges appellate counsel was ineffective for failing to raise the issue on direct appeal. See *People v. Moore*, 402 Ill. App. 3d 143, 146 (2010) (finding a claim of ineffective assistance of trial counsel that could have been raised on direct appeal was cognizable in a postconviction petition when framed as a claim of ineffective assistance of appellate counsel). Thus, we consider Daniels's petition as a claim of ineffective assistance of appellate counsel.

¶ 17    Claims of ineffective assistance of appellate counsel are evaluated under the same two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), for assessing claims of ineffective assistance of trial counsel. *People v. Harris*, 206 Ill. 2d 1, 34 (2002). "Under that standard, a defendant must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. English*, 2013 IL 112890, ¶ 33. When a defendant alleges appellate counsel was ineffective for failing to raise an issue, "[u]nless the underlying issue is meritorious, [the defendant] suffered no prejudice from counsel's failure to raise it on direct appeal." *People v. Childress*, 191 Ill. 2d 168-175 (2000).

¶ 18    Here, Daniels claims he was prejudiced by appellate counsel's failure to challenge the imposition of consecutive sentencing—as a claim of either trial counsel's ineffectiveness or plain error—on direct appeal. His claim is premised on section 5-8-4, which provides for mandatory consecutive sentencing when: "[o]ne of the offenses for which the defendant was convicted was

first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1) (West 2008). Since the sentencing court never expressly stated that it found Daniels had "inflicted severe bodily injury," he argues, the court was not permitted to impose consecutive sentences.

¶ 19    Daniels also relies on *People v. Alvarez*, 2016 IL App (2d) 140364. In *Alvarez*, the trial court found the defendant guilty of attempted first degree murder and other offenses after a bench trial. *Id*. ¶ 1. The court made an express finding that the defendant caused "great bodily harm and permanent disfigurement" by shooting the victim, which resulted in a mandatory 25-year firearm enhancement pursuant to 720 ILCS 5/8-4(c)(1)(D) (West 2008). *Id*. ¶ 12. At a subsequent sentencing hearing, the court relied on its previous finding that the defendant personally discharged a firearm causing great bodily harm to find that the defendant inflicted severe bodily injury, making consecutive sentencing mandatory pursuant to section 5-8-4(d)(1). *Id*. ¶ 14.

¶ 20    On appeal, the defendant argued that the trial court's finding of great bodily harm for the firearm enhancement was insufficient to establish a finding of severe bodily injury to impose consecutive sentences. *Id*. ¶ 21. The Second District addressed conflicting precedent on the issue. It rejected the Fourth District's reasoning in *People v. Witherspoon*, 379 Ill. App. 3d 298 (2008), that "The difference between 'great bodily harm' and 'severe bodily injury' is merely semantic; no meaningful distinction can be made between 'great' and 'severe' or between 'harm' and 'injury.' " (Internal quotation marks omitted.) *Id*. ¶ 22. Instead, the court was persuaded by the First District's decision in *People v. Williams*, 335 Ill. App. 3d 596 (2002), which found "the use of the two different terms 'great bodily harm' and 'severe bodily injury' was intended by the legislature to achieve different results." *Id*. ¶ 23. The *Williams* court relied on the canon of statutory construction that "[w]here the legislature uses certain words in one instance and different words in another,

different results were intended." *Williams*, 335 Ill. App. 3d at 599-600. That court further reasoned, " 'severe bodily injury' requires a degree of harm to the victim that is something more than that required to create the aggravated battery offense.' " *Id*. at 600. Aggravated battery required proof of "great bodily harm." See 720 ILCS 5/12-3.05(a)(1) (West 2024).

¶ 21    Following *Williams*, the *Alvarez* court found that "A finding of 'great bodily harm' does not necessarily or automatically result in a finding of 'severe bodily injury' for purposes of consecutive sentencing." *Alvarez*, 2016 IL App (2d) 140364, ¶ 24. Thus, the court declined to uphold consecutive sentences without an explicit finding of " 'severe bodily injury.' " *Id*. The trial court's reliance on its prior " 'great bodily injury' " finding for the firearm enhancement did not suffice. *Id*. Consequently, the court vacated the sentencing order in part and remanded the matter for reconsideration of whether consecutive sentences should be imposed. *Id*. ¶ 25.

¶ 22    We find this case distinguishable from *Alvarez*. Unlike *Alvarez*, the sentencing judge here did not expressly base the imposition of consecutive sentences on his prior findings of great bodily harm, made for purposes of the firearm enhancements. Rather, at sentencing, the court stated that the "[t]wo victims were severely hurt *** they had severe injuries as a result of these gunshots." Unmistakably, these remarks carry the same meaning as a finding that Daniels inflicted severe bodily harm and, therefore, section 5-8-4(d)(1) was satisfied. We will not ignore the court's clear expression merely because it did not recite the statute's words verbatim. Such a strict requirement places form over substance.

¶ 23    Moreover, even if the court's finding would have been found deficient to impose consecutive sentences on direct appeal, there is no reasonable probability of a different result. As *Alvarez* and *Williams* illustrate, the remedy is a remand to the trial court to reconsider the issue. Based on the record here, there is no doubt the trial court would have found that Daniels inflicted

severe bodily injury and order the sentences to be served consecutively. That finding would not have been against the manifest weight of the evidence. See *Alvarez*, 2016 IL App (2d) 140364, ¶ 19 ("[A] trial court's determination that an injury is severe for purposes of consecutive sentencing may be reversed only if it is against the manifest weight of the evidence"). Notably, at no point has Daniels claimed that Campbell or Smith did not, in fact, sustain severe bodily injuries. His contention relies solely on the court's failure to utter that exact phrase. Since the only possible relief would have been a remand to the circuit court, where Daniels would have likely received the same sentence, Daniels was not prejudiced by appellate counsel's failure to include this issue on direct appeal.

¶ 24                                    III. CONCLUSION

¶ 25        Based on the foregoing, we find the postconviction petition failed to state an arguable claim and was properly dismissed at the first stage. We therefore affirm the judgment of the trial court.

¶ 26        Affirmed.