2021 IL App (1st) 180529-U

FIRST DIVISION
March 1, 2021

No. 1-18-0529

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CR 724 |
| | ) | |
| JOHNATHAN REZA, | ) | The Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The judgment of the circuit court is affirmed. Defendant's convictions are affirmed where the circuit court erred by admitting other-crimes evidence, but the error did not warrant plain error relief because the evidence of defendant's guilt was not closely balanced, and defendant did not establish that the admission of other-crimes evidence resulted in any prejudice, so his ineffective assistance of counsel claim fails. The circuit court's imposition of consecutive sentences is affirmed because the record on appeal demonstrates that the circuit court made a finding that the victim of the attempted murder sustained a severe bodily injury for the purposes of section 5-8-4(d)(1) of the Unified Code of Corrections and that finding is not against the manifest weight of the evidence. Trial counsel was not ineffective for failing to object to the imposition of consecutive sentences.

¶ 2     Defendant, Johnathan Reza, was charged with two counts of attempted murder and numerous counts of aggravated battery after he allegedly stabbed Jose Diaz and Jose Duran during an altercation in a bar parking lot and then rammed his truck into Jonathan Brito's car as Brito attempted to drive away from the scene with Diaz and Duran. Following a bench trial, Reza was convicted of the attempted murder and aggravated battery of Diaz and the aggravated battery of Duran. The convictions for the attempted murder and the aggravated battery of Diaz merged, and defendant received a six-year prison sentence. He received a five-year prison sentence for the aggravated battery of Duran. The circuit court ordered the sentences to be served consecutively, resulting in an 11-year prison sentence.

¶ 3     On appeal, defendant does not challenge the sufficiency of the evidence supporting his convictions. Instead, he argues that the circuit court erred by admitting other-crimes evidence and erred by imposing a mandatory consecutive sentence. He also asserts that his trial counsel provided ineffective assistance. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5     Defendant was charged with two counts of attempted murder and eight counts of aggravated battery for stabbing Diaz and Duran on December 11, 2015, and two counts of aggravated battery for driving his vehicle into Brito's car, also on December 11, 2015, all of which resulted in bodily harm to the victims. The only charges at issue in this appeal are the attempted murder and the aggravated battery of Diaz and the aggravated battery of Duran.

¶ 6     Prior to trial, the State filed a motion *in limine* seeking to introduce evidence of other alleged crimes committed by defendant. The only other-crimes evidence relevant to this appeal is defendant's arrest following an incident during a conversation with his landlord, Neal Pacheco, on December 8, 2015, in which defendant allegedly grabbed a knife and said, "This is what I use on

people who fuck with me." The State's motion asserted that it sought to introduce the other-crimes evidence for *modus operandi*, intent, absence of innocent frame of mind, absence of mistake or accident, and to contradict defendant's denials. At the hearing on the motion, however, the assistant state's attorney clarified that:

> "While I have written *modus operandi*, your Honor, I'm not asking to use it for that matter. But clearly, Judge, this would fall under, should your Court [*sic*] allow, other crimes evidence to show the defendant's intent. As the Court is aware, intent, Judge, can be garnered from those matters before an offense, during an offense, or even after an offense, absence of the defendant's innocent frame of mind, absence of any mistake or accident by the defendant, and just as importantly, your Honor, to contradict the defendant's denials."

The State also noted that defendant had filed an affirmative defense of self-defense. After hearing argument, the circuit court granted the motion, stating,

> "Both of the cases involve a knife. Both of them deal with some sort of dispute. And so over the defense vigorous [*sic*] objection, I'm going to allow it in for one purpose and one purpose only and that purpose would be *modus operandi*. It won't be admitted for any other purpose."

¶ 7    During the State's opening statement at the bench trial, the State asserted that Pacheco's testimony was relevant to show defendant's *modus operandi*. At trial, Pacheco gave the following testimony related to the other-crimes evidence. He rented an apartment to defendant. In December 2015, he went to the unit to discuss defendant moving out and defendant's rent. During the conversation, defendant began yelling and screaming about his roommate and having to move out. Defendant cried and turned "Dr. Jekyll and Mr. Hyde." Defendant went into a bedroom and

returned holding a knife with a black blade and Pacheco described defendant holding the blade with a finger through a hole. Defendant pointed the knife at Pacheco and said "this is what happens to people who fuck *** with me, and I could go zero to a hundred like a flick of a switch." Pacheco went outside and called his wife, who called the police. Defendant followed Pacheco outside and when the police arrived, he argued and yelled. The police removed defendant from the property. Pacheco felt threatened by defendant and acknowledged that defendant never made any physical contact with him.

¶ 8    The following testimony was given at trial relevant to the attempted murder and aggravated battery charges. Jacklyn Frieri testified that on December 10, 2015, a wake was held for Miguel Ayala, a man who went to high school with Frieri, Diaz, Duran, Brito, and defendant. After the wake, Ayala's family hosted a reunion at the Illinois Bar & Grill. Diaz, Duran, and Brito were at Brito's house before they went to the bar. Diaz, Duran, and Brito picked up Frieri from her house in Brito's car, and the group arrived at the bar around 11 p.m. Frieri testified that she had five drinks at the bar and that the others were drinking but testified that neither she nor Diaz were intoxicated. Defendant, whom Frieri had known since the sixth grade, was at the bar and left half an hour before the bar closed. She and the others left the bar at closing time and the group stood around drinking and smoking in the parking lot near Brito's car. Defendant pulled up in a Dodge Ram truck as if he were going to hit the group. Defendant smiled at the group and got out of the truck. Duran then threw a beer bottle at the windshield of defendant's truck. Defendant came over and started fighting with Duran by punching him numerous times in the back. Diaz stepped in to break up the fight when defendant started swinging at Diaz from behind, hitting him in the upper body. Diaz ran backwards and yelled that he needed to go to the hospital. Frieri saw blood on Diaz's face and clothes. During the fight, she did not see defendant holding a knife and only saw

4

defendant throwing what she thought were punches. She did not see Duran punch defendant. Neither Duran nor Diaz had any weapons, and they were both bleeding. Frieri, Duran, and Diaz got into Brito's car and Frieri tried to stop their bleeding while Brito drove when defendant repeatedly rammed Brito's car with his truck, eventually causing Brito to black out.

¶ 9    Diaz testified that he did not know defendant. When defendant drove his truck at the group in the parking lot, he heard defendant say something but did not hear what he said. Duran then started arguing with defendant and walked away. Defendant parked his truck, and Diaz then saw defendant and Duran fighting, with defendant taking swings at and hitting Duran's upper back. He did not see any weapons. Diaz tried to separate defendant and Duran by getting between them and pushing them apart, and he tried to catch Duran as Duran was falling. Diaz had his back to defendant, who reached around from behind and started punching Diaz in the chest, at which time Diaz realized that he was being stabbed. After he was stabbed, he ran toward his friends and defendant chased him. Diaz fell to the ground and defendant stabbed him on the side of his face and in the back. As Diaz rolled on the ground to protect his face, defendant stabbed him in his upper back between his lungs. The circuit court took judicial notice of a scar on Diaz's face. Brito and others were able to get defendant off Diaz, allowing him to get to the sidewalk and eventually to Brito's car. The last thing Diaz remembered was being in the backseat of Brito's car and getting rammed by another vehicle. At trial, he identified numerous photographs of the injuries to his face and chest. Diaz no longer had movement on the left side of his face. He testified that he had not been drinking that night. He did not see anyone throw at bottle at the truck. Defendant was holding the knife between his middle and index finger when he stabbed Diaz in the chest.

¶ 10    Duran testified that had a few drinks at the bar before leaving at closing time and had one drink before arriving at the bar. Duran did not know defendant. He saw a Dodge Ram driving

toward him and his friends at a fast speed, so he threw a beer bottle at the truck's windshield. He threw the bottle because he heard defendant saying something but did not recall what was said. Defendant got out of the truck and started chasing Duran. Duran initially thought that defendant was punching him in the back and did not immediately realize that he was being stabbed from behind. He could not defend himself because he was being stabbed from behind. He was also stabbed on the lower right side of his neck, which left a scar. Duran fell to the ground at some point. He did not have any weapons and did not see what kind of knife defendant held. The last thing that he remembered was Diaz pushing defendant away to break defendant and Duran apart. Duran was hospitalized for two weeks and underwent surgery on his back and neck. After meeting with detectives, Duran identified defendant as the person who stabbed him.

¶ 11    Brito testified that he did not know defendant prior to December 11. Brito was in the parking lot when the Dodge Ram drove past him and his friends and truck was going "pretty fast." He did not see anyone throw a bottle at the truck. He heard Diaz scream that someone was stabbing him. He saw Diaz on his knees bleeding against a wall and still being hit but did not see any weapons. Brito testified that another man, Juan Salgado, pushed defendant away from Diaz. Brito helped Diaz get into Brito's car. Duran, who was also bleeding, and Frieri got into Brito's car. As Brito drove down an alley, defendant rammed his truck into Brito's car several times. Brito was eventually able to drive to the hospital, and subsequently identified defendant as the man who attacked Diaz and was driving the Dodge Ram. Brito had several drinks while at the bar and before arriving.

¶ 12    Detective Smith testified that he met with Diaz in the emergency room and observed Diaz bleeding from a large wound to his chest and the side of his face. Detective Smith also observed Duran in the emergency room with a stab wound to his neck and a puncture wound on his back.

He was unable to speak to Duran because Duran was flatlining. The detectives interviewed Brito, Frieri, and Salgado. Frieri told detectives that defendant was the person who stabbed her friends. The detectives spoke to two police officers who encountered defendant around 2:30 a.m. near the scene of the stabbings. The officers said that defendant claimed he was jumped and may have stabbed someone, although the officers could not verify the information. Detective Smith went to the Illinois Bar & Grill parking lot and found broken glass, broken beer bottles, and pieces of shattered glass from Brito's car. The detectives also went to defendant's apartment building; defendant was not there but the detectives observed a Dodge Ram with front end damage near the building.

¶ 13    The parties stipulated that, if called to testify, Chicago police officer Ivan Lopez would testify that he and his partner encountered defendant on December 11, 2015, at 2:47 a.m. near the scene of the crimes and completed a contact card. Defendant told the officers that he had been in an altercation with people that he did not know and that he might have stabbed someone. The parties also stipulated that an evidence technician would testify that he took photos at the scene, of Brito's car, and of Duran's injuries, and took blood swabs of the sidewalk near the scene.

¶ 14    Dr. Jeremy D. Slayton testified by way of stipulation that he treated Duran at Mt. Sinai Hospital. Duran could not talk and had difficulty breathing. There was a large gaping wound about 10 centimeters long that exposed two ends of an artery in Duran's neck that was bleeding profusely. Duran also had a large gash on his back that revealed his ribs and lung when gently retracted. He also had a two-centimeter gash on the left side of his back and six other stab wounds on the left side of his back. Duran underwent surgery on his neck and received treatment, including staples, for the stab wounds on his chest.

¶ 15    Dr. Mario Ellis testified by way of stipulation that Diaz presented at Mt. Sinai Hospital with a five-centimeter laceration at the base of the helix—near the top of the ear—extending to his face resulting in a 90% laceration of his facial nerve at the bony stylomastoid foramen.

¶ 16    Finally, the parties stipulated that Brian Schoon, an Illinois State Police Forensic Scientist, was qualified as an expert in forensic biology, and that, if called at trial, would testify that DNA found at the scene matched the Diaz's DNA profile but did not match either Duran or defendant.

¶ 17    The State moved various exhibits into evidence and rested. Defendant moved for a directed verdict, which the circuit court granted in part and denied in part, and the circuit court entered a finding of not guilty on the aggravated battery charges involving Brito. Defendant did not present any evidence. During closing arguments, the State argued in part that Pacheco's testimony indicated intent and *modus operandi*, specifically that defendant's weapon of choice was a knife and "how quickly he can go in the blink of an eye from okay to angry and angry enough to kill."

¶ 18    The circuit court found defendant guilty of the attempted murder and the aggravated battery of Diaz and the aggravated battery of Duran. The circuit court found defendant not guilty of the attempted murder of Duran. Defendant filed a motion for a new trial, which failed to specifically preserve defendant's objection to the admission of Pacheco's trial testimony. Following a hearing, the circuit court denied defendant's motion for a new trial.

¶ 19    After hearing argument at sentencing, the circuit court merged defendant's convictions for the attempted murder and aggravated battery of Diaz and sentenced him to six years in prison, and sentenced defendant to five years in prison for the aggravated battery of Duran. The State argued that the sentences should be served consecutively under section 5-8-4 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(d)(1) (West 2014)) due to the severe bodily injury involved. The court found that "There's no doubt, based on the evidence I heard in this case, that severe

bodily injury was inflicted; and there's also no doubt that attempt murder is a Class X felony. So, I believe that the sentences must run consecutive to one another." Defendant filed a motion to reduce sentence, which did not advance any argument that his sentences should run concurrently rather than consecutively. The circuit court denied defendant's motion to reduce sentence. Defendant filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21      On appeal, defendant raises two main arguments. First, he argues that the circuit court erred by admitting Pacheco's testimony for a *modus operandi* purpose where defendant's identity was not at issue because defendant raised a justified use of force theory at trial. In the alternative, he argues that his trial counsel provided ineffective assistance by failing to advise the circuit court that the State abandoned the portion of its motion seeking to introduce other-crimes evidence for *modus operandi* purposes. Second, he argues that the circuit court erred by imposing a consecutive sentence because severe bodily injury did not occur during the triggering offense of attempted murder. He also argues that the circuit court's sentencing judgment is ambiguous on the issue of severe bodily injury and that a remand is appropriate to allow the circuit court to make a specific finding. In the alternative, he argues that his trial counsel provided ineffective assistance by failing to object to the imposition of consecutive sentences in the motion to reduce sentence. We address these arguments in turn.

¶ 22      We first address defendant's argument that the circuit court erred by admitting Pacheco's testimony for a *modus operandi* purpose. Defendant notes that the State abandoned its request to admit other-crimes evidence for *modus operandi* purposes at the hearing on the motion *in limine*, but the circuit court admitted the evidence only for that purpose. He argues that his identity was not at issue in the case because his defense theory—asserted by his counsel during his opening

9

statement and closing arguments—was that his use of force was justified, and that there was nothing distinctive or unique about the Pacheco incident and the stabbings of Diaz and Duran. Furthermore, he argues that other-crimes evidence was inadmissible under any of the other theories advanced by the State: intent, absence of innocent frame of mind, and absence of mistake or accident.

¶ 23    Defendant acknowledges that this issue was not preserved for appellate review but asks this court to review the admission of other-crimes evidence under the doctrine of plain error. Under the plain error doctrine, a reviewing court may consider unpreserved errors when a clear and obvious error has occurred (*People v. Hillier*, 237 Ill. 2d 539, 545 (2010)), and either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence (*People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). Defendant argues that both prongs are met here.

¶ 24    We must first determine whether the circuit court erred by admitting evidence of other crimes. The admissibility of evidence at trial is within the circuit court's discretion, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. Here, the circuit court explicitly stated that it was admitting evidence of the incident with Pacheco solely for the purpose of *modus operandi*, despite the assistant state's attorney explicitly clarifying that the State was *not* seeking admission of the other-crimes evidence for that purpose. This court, however, may affirm the circuit court's decision to admit evidence for any reason supported by the record, regardless of whether the circuit court's specific reasoning was correct. *People v. Novak*, 163 Ill. 2d 93, 101 (1994); *People v. Johnson*, 208 Ill. 2d 118, 128 (2003). To establish a clear and obvious error warranting plain error review, defendant must demonstrate that there was no legitimate basis for the admission of the other-crimes evidence.

¶ 25    Other-crimes evidence is inadmissible if offered merely to establish that the defendant has a propensity to commit crimes but is admissible "if relevant to establish any material question other than the propensity to commit a crime." *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). Examples of relevant purposes include motive, criminal intent, identity, *modus operandi*, or absence of mistake. *People v. Hale*, 2012 IL App (1st) 103537, ¶ 24 (citing *People v. Wilson*, 214 Ill. 2d 127, 135 (2005)). We have explained that *modus operandi*

> "refers to a pattern of criminal behavior so distinct that separate crimes or wrongful conduct are recognized as the work of the same person. [Citation.] If evidence of other crimes is offered to prove *modus operandi*, there must be some clear connection between the other crime and the crime charged which creates a logical inference that if defendant committed one of the acts, he may have committed the other act. This inference of identity does not arise from the mere fact that the crime charged and the other crime share certain common features or marks of similarity, for it may be that these similarities are shared not only by the crime charged and defendant's other crime, but also by numerous distinct crimes committed by persons other than the defendant. Rather, the inference is created when both crimes share peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant. [Citation.] There must be some distinctive features that are not common to most offenses of that type. [Citation.] While there must be a strong and persuasive showing of similarity between the other crime and the crime charged to satisfactorily demonstrate *modus operandi* [citation] it is not necessary that the crimes be identical for the other crime to be admitted in evidence to prove *modus operandi*." *People v. Kimbrough*, 138 Ill. App. 3d 481, 486-87 (1985).

¶ 26    Here, the circuit court should not have admitted the other-crimes evidence for a *modus operandi* purpose because the two incidents were too dissimilar to establish a common pattern of criminal behavior. During the Pacheco incident, defendant allegedly brandished a knife, pointed it at Pacheco, and warned him that "this is what happens to people who fuck with me" during a discussion at defendant's apartment about rent and defendant's roommate. There was no evidence that Pacheco provoked or incited any sort of physical conflict during the conversation. In the stabbing incident, witnesses testified that defendant said something from his truck, but no one could recall what was said. There was no evidence that defendant, after getting out of his truck, pointed a knife at any of the victims while making any sort of threat; none of the witnesses were even aware that defendant was holding a knife until they were either being stabbed or heard someone say they were being stabbed. And the stabbing incident occurred after a bottle was thrown at defendant's truck from a group of people in bar parking lot. The incidents occurred in dissimilar locations at different times of the day and under different surrounding circumstances. The only similarities between the incidents are that they both involved defendant holding a knife with the blade protruding from his fingers and involved some sort of dispute. The State did not make a "strong and persuasive showing of similarity" between the two events, and the circuit court should not have admitted the other-crimes evidence for the purpose of *modus operandi*.

¶ 27    The State argues that the other-crimes evidence was admissible to show defendant's intent, state of mind, and the identity of the weapon used in the stabbings. We disagree. First, regarding intent, the State asserts that "the other crimes evidence was relevant to establish defendant's intent to kill when he continued to stab Diaz in the face, the back and chest using a deadly weapon and not to defend himself or his personal property from a forcible felony." But the State does not make an actual argument as to how the Pacheco incident establishes defendant's intent to kill Diaz—

12

who testified that he did not know defendant prior to the stabbing—three days later. Second, the State does not explain how defendant's statement to Pacheco three days prior to the offenses goes to establishing defendant's state of mind during commission of the offenses charged here. The State's assertion that the incident with Pacheco "established defendant's state of mind of how he handles the people who mess with him" fails to connect the other-crimes evidence with the offenses charged here. Third, the State's argument that the other-crimes evidence was relevant to establish the identity of the weapon does not account for the fact that none of the witnesses here were able to testify as to the particular features of the knife involved; Pacheco testified that defendant held a black blade, whereas some of the witnesses here only testified that they saw a blade. No knife was introduced as evidence at trial and the State does not direct us to any evidence establishing or tending to show that the blade used during the Pacheco incident was the same blade used in the stabbings. We therefore find that there was no basis for the circuit court to admit the other-crimes evidence, and thus the admission of that evidence was error.

¶ 28    We find however, that defendant is not entitled to first-prong plain error relief because the evidence of his guilt was not closely balanced. Defendant's primary theory at trial was that his use of force was justified. His counsel argued that defendant was not trying to hit anyone with his Dodge Ram and that after his truck was hit with a bottle, other bottles were thrown at defendant, requiring him to defend himself. On appeal, defendant argues that the evidence was closely balanced because (1) the circuit court found him not guilty of the attempted murder of Duran and aggravated battery of Brito, and (2) the circuit court "questioned the prosecutor whether it would be reasonable for [defendant] to conclude that Diaz was not merely trying to break up the fight" but was instead joining in the fight. We disagree.

13

¶ 29    First, the fact that defendant was found not guilty of the attempted murder of Duran and the aggravated battery of Brito says little about the quality of the evidence of defendant's guilt for the attempted murder and the aggravated battery of Diaz and the aggravated battery of Duran. In finding defendant not guilty of the attempted murder of Duran, the circuit court observed that Duran started the fight, defendant and Duran were initially "in a mutual combat situation," and defendant may not have had an intent to kill Duran. But the evidence showed that defendant repeatedly stabbed Duran, who was unarmed, attempting to retreat, and not fighting back. And while defendant asserted that his use of force was justified, there was little evidence at trial to support that theory. The evidence at trial showed that Duran threw a beer bottle at defendant's truck; some of the witnesses believed that defendant was driving the truck at them. Even accepting defendant's theory that Duran was the initial aggressor—which is debatable, as both Duran and Frieri testified that defendant drove the truck at the group at a fast speed before Duran threw the beer bottle—defendant's response of getting out of his truck, chasing Duran down, and repeatedly stabbing him was not justified, as there was no evidence, either direct or circumstantial, tending to show that defendant reasonably believed that the use of deadly force was necessary to prevent imminent death or great bodily harm to himself or another. See 720 ILCS 5/7-1(a) (West 2014) ("A person is justified in the use of force against another *** which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another ***."). In other words, the evidence was clear that any mutual combat did not continue through the duration of defendant stabbing Duran, and thus there was no close question of defendant's guilt for the aggravated battery of Duran.

¶ 30    Likewise, the evidence at trial showed that Diaz was attempting to break up the fight rather than participate in it. He testified that he was attempting to help Duran as Duran was falling when defendant began stabbing Diaz, and defendant chased Diaz while Diaz was running away, only for defendant to continue stabbing Diaz in the face and back after he fell to the ground. Diaz was unarmed and there was no evidence tending to show that Diaz attempted to fight defendant. Likewise, there was no evidence that might support an inference that defendant felt threatened by Diaz or that he reasonably believed that his conduct was necessary to protect himself while outnumbered. The evidence of defendant's guilt for the attempted murder and aggravated battery of Diaz was not close. Therefore, we find that defendant is not entitled to first-prong plain error relief because the evidence of his guilt for the charges on which he was convicted was not closely balanced.

¶ 31    Defendant also argues that the circuit court's erroneous admission of other-crimes evidence rises to the level of second-prong plain error. He relies primarily on our supreme court's statement that "[t]he erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal" (*People v. Lindgren*, 79 Ill. 2d 129, 140 (1980)), and relies on *People v. James Jackson*, 2017 IL App (1st) 142879 and *People v. Lewis Jackson*, 399 Ill. App. 3d 314 (2010) to argue that the admission of other-crimes evidence constitutes a "serious" error.

¶ 32    We do not agree that the error here rises to the level of second-prong plain error. While both *James Jackson* and *Lewis Jackson* stand for the proposition that other-crimes evidence—in those cases, the defendants' alleged drug use—may constitute serious error warranting second-prong plain error relief, both of those cases involved jury trials where the other-crimes evidence was found to amount to nothing more than evidence showing propensity (*James Jackson*, 2017 IL App (1st) 142879, ¶ 74 (finding that admission of evidence of marijuana smell was nothing more

than propensity evidence in a jury trial for battery and resisting arrest)), or bad character (*Lewis Jackson*, 399 Ill. App. 3d at 321-22 (finding that admission of evidence of drug use was merely evidence that defendant was a bad person in a jury trial for murder)). Those cases both relied on the principle stated in *Lindgren* that evidence of other crimes is improper because it "overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment." *Lindgren*, 79 Ill. 2d at 137. But here, the circuit court conducted a bench trial, and thus there was no jury to overpersuade. As we have held in the context of other-crimes evidence, "[i]n a bench trial, [the fear of overpersuasion of the jury] is assuaged; it is presumed that the circuit court considered the other-crimes evidence only for the limited purpose for which it was introduced." *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24 (citing *People v. Deenadayalu*, 331 Ill. App. 3d 442, 450 (2002)).

¶ 33    Here, the circuit court only admitted evidence of the Pacheco incident for the purposes of *modus operandi*, and there is nothing in the record to suggest that the circuit court considered the other-crimes evidence for any other purpose in determining defendant's guilt. There was no risk that the circuit court would convict defendant merely for being a bad person deserving of punishment, as the evidence was only admitted to establish a pattern of behavior indicating that defendant was the offender in both crimes, an issue that defendant strenuously argues was uncontested at trial. To be clear, we take no position on whether other-crimes evidence might rise to the level of serious error for the purposes of second-prong plain error. We simply find that, under the circumstances of this case, we do not believe that the admission of other-crimes evidence was serious, and therefore defendant is not entitled to relief under the second prong of a plain error analysis.

¶ 34    In the alternative, defendant argues that his trial counsel provided ineffective assistance by failing to advise the circuit court that the State abandoned the portion of its motion seeking to introduce other-crimes evidence for *modus operandi* purposes. He contends that there was no reasonable trial strategy in failing to object to the admission of other-crimes evidence for the purpose of *modus operandi*, or in failing to remind the circuit court that the State expressly was not seeking admission of other-crimes evidence for that purpose. He argues that he was prejudiced because the erroneous admission of other-crimes evidence is highly prejudicial.

¶ 35    Criminal defendants have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant is denied effective assistance where his counsel's performance fell below an objective standard of reasonableness, and absent counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 684-85.

¶ 36    Here, defendant's ineffective assistance claim is fully resolved on the issue of prejudice. We have already held that the admission of the other-crimes evidence was erroneous but that the evidence of defendant's guilt was not closely balanced, and the admission was not a serious error that affected the integrity of the proceedings. Defendant does not direct us to any portion of the record that might establish that he was prejudiced by the admission of the other-crimes evidence, and thus he cannot prevail on his ineffective assistance of counsel claim. We express no opinion on whether counsel's performance fell below an objective standard of reasonableness.

¶ 37    In light of the foregoing, we affirm defendant's convictions for attempted murder and aggravated battery.

¶ 38    Next, defendant argues that the circuit court erred by imposing consecutive sentences under section 5-8-4 of the Code because Diaz's injuries did not rise to the level of severe bodily injury. He argues that Diaz was released from the hospital the same day that he was admitted, and that the medical testimony at trial only discussed a five-centimeter complex facial laceration and facial nerve laceration, and that no medical testimony was offered to support Diaz's testimony that he continued to lack movement in face due to his injuries. Defendant argues in the alternative that the circuit court's finding that "a severe bodily injury was inflicted" was ambiguous, as it did not specify whose injuries were severe. He asks that we either order his sentences to run concurrently or to remand the matter to the circuit court for a determination of whether Diaz's injuries amounted to severe bodily injury. We disagree with both of defendant's arguments.

¶ 39    Defendant again acknowledges that this issue was not preserved for appellate review but asks this court to review the sentencing issue under the doctrine of plain error. In the sentencing context, defendant must show that an error occurred and either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. "The improper imposition of consecutive sentences *** might violate a defendant's fundamental rights." *People v. Alvarez*, 2016 IL App (2d) 140364, ¶ 17.

¶ 40    Section 5-8-4(d)(1) of the Code provides that consecutive sentences are mandatory where "[o]ne of the offenses for which the defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1) (West 2014). Defendant contends, and the State does not dispute, that he was only subject to a consecutive sentence if the severe bodily injury was inflicted during the attempted murder of Diaz, a Class X felony. Furthermore, there is no clear definition of the phrase "severe bodily injury,"

and the question of whether a bodily injury is severe is "a question properly left to the fact finder." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "[A] trial court's determination that a bodily injury is 'severe' for purposes of consecutive sentencing may be reversed only if it is against the manifest weight of the evidence." *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.*

¶ 41     At sentencing, the State argued that the sentences should run consecutively but did not specify whose injuries amounted to severe bodily injury or whether both victims' injuries met that standard. In announcing its sentencing judgment, the circuit court made the following statements:

> "As I indicated earlier, I have reviewed my notes in the case; and I've reviewed all of the factors in aggravation and mitigation.
>
> The factors in aggravation are basically, the facts of the case in terms of the [d]efendant's or Mr. Reza's inability to stop after the fight was over; and in pursuing the fight further, he inflicted great bodily harm.
>
> * * *
>
> In terms of how the sentences should run, I do believe that the State is correct, the sentences should run or must run consecutive to one another, pursuant to 730 ILCS 5/5-8-4-[d](1). That provision specifically says, that if one of the offenses for which the [d]efendant was convicted of first degree murder or Class X felony, and the [d]efendant has inflicted severe bodily injury, that the sentences must run consecutively.

There's no doubt, based on the evidence that I heard in this case, that severe bodily injury was inflicted; and there's also no doubt that attempt murder is a Class X felony. So, I believe that the sentences must run consecutive to one another."

¶ 42    The circuit court's statements indicate that it made a finding that defendant inflicted severe bodily injury on Diaz during the triggering offense—attempted murder, a Class X felony—for the purposes of section 5-8-4(d)(1). We do not agree with defendant that the circuit court's pronouncement is ambiguous. The circuit court was commenting on whether a consecutive sentence was required and referred to the two factors that were required under the statute: a Class X offense and infliction of severe bodily injury during the commission of that felony. *Alvarez*, 2016 IL App (2d) 140364, ¶ 18. While it is clear to us that the circuit court was addressing the attempted murder conviction related to Diaz and the severe bodily injury Diaz suffered during that offense, at a minimum we also presume that the trial court was discussing the injuries to Diaz, the attempted murder victim, while discussing severe bodily injury for the purposes of section 5-8-4(d)(1). The law is that the severe bodily injury must be connected to the triging offense and "[t]he trial court is presumed to know and follow the law." *People v. Stoffel*, 239 Ill. 2d 314, 327 (2010) (citing *People v. Jordan*, 218 Ill.2d 255, 269 (2006)). That presumption is only rebutted where the record "contains strong affirmative evidence to the contrary. *People v. Howrey*, 178 Ill 2d 1, 32 (1997). Here, defendant does not direct us to any strong affirmative evidence showing that the circuit court misapplied the law when determining the relevant injuries and offense for the purposes of section 5-8-4(d)(1). We therefore reject defendant's argument that the circuit court's sentencing order was ambiguous.

¶ 43    We next find that the circuit court's finding that Diaz's injuries constitute severe bodily injury is not against the manifest weight of the evidence. Diaz testified that he was stabbed in the

chest, back, and face. The circuit court took judicial notice of the scar on Diaz's face and heard testimony that Diaz no longer had movement on the left side of his face. The circuit court heard medical testimony that Diaz suffered a 90% laceration of his facial nerve. The circuit court's finding that Diaz's injuries were severe is neither unreasonable nor arbitrary and was clearly based on the evidence presented. An opposite conclusion is not clearly evident.

¶ 44    Defendant argues that Diaz's injuries do not rise to the level of severe bodily injury. He contends that the only medical testimony regarding Diaz's wounds related to the laceration on his face and there was no medical testimony showing that he lacked movement in his face. He also contends that there was no testimony as to how long Diaz was hospitalized or the severity of the wounds. Defendant further argues that it is questionable whether lacerations rise to the level of severe bodily injury. We do not agree.

¶ 45    First, defendant cites no authority to support his contention that medical testimony was necessary to establish the extent of Diaz's injuries. See *People v. Cisneros*, 2013 IL App (3d) 110851, ¶ 21 (observing that the absence of medical testimony regarding severity or permanency of an injury does not preclude a finding of severe bodily harm). Here, the circuit court heard Diaz's testimony and observed photographs of his injuries, evidence that the circuit court was free to consider in determining the severity of his injuries. Diaz testified that he was stabbed in the chest and back, and that the cut to his face left him with a lack of movement and a scar. And while it is true that severe bodily harm requires a degree of harm greater than that required to create the aggravated battery offense, Diaz testified that he still lacked movement in face nearly two years after the stabbing. Medical testimony was given corroborating the extent of the wound: a five-centimeter laceration near the base of the ear extending to his face resulting in a 90% laceration of his facial nerve at the bony stylomastoid foramen. The evidence overwhelmingly established that

Diaz sustained a severe bodily injury. We find that the circuit court's finding that defendant inflicted severe bodily injury on Diaz is not against the manifest weight of the evidence.

¶ 46     Defendant's final argument is that his trial counsel was ineffective for failing to raise any argument at sentencing that Diaz's injuries were not severe, or to assert any argument in his motion to reduce sentence against the circuit court's imposition of consecutive sentences. But once again, defendant cannot establish that he was prejudiced by any deficiency in his counsel's performance because the circuit court found, and the record supports the finding, that the injuries to Diaz were severe. We are not persuaded that, had counsel argued against consecutive sentencing, that the result of the sentencing hearing might have been different.

¶ 47     In sum, we affirm the circuit court's imposition of consecutive sentences based on the finding that defendant inflicted severe bodily injury on Diaz.

¶ 48                                III. CONCLUSION

¶ 49     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 50     Affirmed.