2021 IL App (2d) 180947-U
No. 2-18-0947
Order filed March 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CF-2260 |
| JESSE ALVAREZ, | ) ) ) | Honorable Mark A. Pheanis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly dismissed, at the first stage, defendant's postconviction claim that trial counsel was ineffective for failing to investigate and call witnesses who purportedly would have contradicted a trial witness's testimony that he saw defendant in the vicinity just before the shooting.  Defendant included a police report detailing the proposed witnesses' accounts, but, without affidavits from the witnesses themselves, there was no evidence that trial counsel had neglected to investigate them or that they would have testified consistently with the report.

¶ 2    Defendant, Jesse Alvarez, appeals the trial court's order dismissing his petition pursuant to

the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).  He contends

that his petition stated the gist of a meritorious claim that defense counsel was ineffective for failing to investigate and call three witnesses. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Following a bench trial, defendant was convicted of five counts of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)), two counts of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2008), and one count of armed violence (720 ILC 5/33A-2(a) (West 2008)) in the shooting of Alexander Carrera on July 1, 2009.

¶ 5    At trial, Samuel Sosa testified pursuant to an agreement with the State that he was a member of the Latin Kings in Aurora. Prior to July 1, 2009, Sosa had possession of a "Nation gun" that was available for use by members of the gang. The gun was loaded with seven or eight rounds, including a mix of standard rounds and "shotgun rounds." Two or three days after July 1, 2009, defendant returned the gun to Sosa, saying that he had used it to shoot a "Maniac" in the leg.

¶ 6    Azael Ramirez corroborated Sosa's testimony about the gun. He added that, after the shooting, defendant said that he had waited outside a house on Valley Avenue where some Maniac Latin Disciples were staying. Defendant said that he shot someone who came out of the house and was trying to get back inside. Like Sosa, Ramirez testified pursuant to an agreement with the State.

¶ 7    Carrera testified that he was at home on the night of July 1, 2009, when he went outside to dispose of a cigarette. He noticed someone standing about 20 feet away at the bottom of the steps. The person asked, "What do you claim, dog?," which Carrera understood to mean, "What gang are you in?" Carrera turned and ran back toward the house. The person shot several times, hitting Carrera in the upper thigh and near his knee.

¶ 8     Asked whether he could identify the person who shot him, Carrera responded, "I believe so." He identified defendant as the shooter, but added, "He looks different than before though."

¶ 9     Ebelio Ponce testified that he could not remember anything about the nights of July 1, 2009, or February 26, 2010, because he had been intoxicated and high on drugs on both occasions. After some reluctance, he testified that he remembered giving a statement to the police on February 26, 2010.    He did not recall speaking with a female police lieutenant on July 1, 2009, nor did he remember anything else about that date. The prosecution then played the videotaped statement of a police interview of Ponce on that date. In that statement, Ponce said that he and defendant's brother were at the Brady Elementary School in Aurora on July 1, 2009. Ponce saw defendant just before the shooting. Defendant was wearing gloves and holding one hand behind his back. Defendant was walking down Liberty Street toward Valley Avenue, where the shooting occurred. A short time later, Ponce heard gunshots from the direction of Valley Avenue.

¶ 10     On cross-examination, Ponce denied that he saw defendant on July 1, 2009. He reiterated that he was intoxicated both on the day of the incident and when he gave the videotaped statement. He acknowledged that on February 26, 2010, there was a warrant for his arrest. He testified that what he said in the statement was "false information" that had been given to him. He denied that he even knew defendant, although he was acquainted with defendant's brother, Omar Alvarez.

¶ 11     Sergio Cisneros testified that he was visiting Carrera at the time of the shooting and saw Carrera's injuries. The next day, Cisneros was visiting Omar Alvarez, defendant's brother, when defendant admitted to him that he had shot Carrera with a .45-caliber firearm that fired "hallow bullets."

¶ 12     The court found defendant guilty and sentenced him to a total of 88 years in prison. On direct appeal, defendant contended that the trial court erred in imposing consecutive sentences on

some counts. We remanded for reconsideration of the sentence. *People v. Alvarez*, 2016 IL App (2d) 140364. Following remand, the trial court ordered all sentences to run concurrently, resulting in a total of 31 years' imprisonment.

¶ 13    Defendant filed a postconviction petition. In it, he contended that defense counsel was ineffective for failing to investigate and call three potential witnesses: Roberto Rivera, Lieutenant K. Ziman, and Officer D. Woods of the Aurora Police. Defendant alleged that Rivera would have contradicted Ponce's recorded statement about seeing defendant prior to the shooting. The officers, who allegedly spoke to Rivera at the scene of the shooting, would have corroborated his account.

¶ 14    No affidavits were attached to the petition. However, the petition included a police report, apparently authored by Woods, that described encountering Ponce and Rivera on the night of the shooting. According to the report, Woods and Ziman were investigating the shooting when Rivera and Ponce rode up on bicycles and asked what happened. Woods explained that there had been a shooting and Rivera asked if everyone was okay. Rivera said that he and Ponce had been with the victim earlier that evening. Shortly before midnight, they went to a nearby gas station to get something to drink. They then went to Rivera's house to tell his mother that they were going back to Valley Avenue. According to the police report, neither Rivera nor Ponce "claimed to have any knowledge of the shooting and there was nothing to suggest otherwise at the time of this report." Defendant argued that testimony from these witnesses would have established that Ponce's videotaped statement to the police claiming to have seen defendant near the crime scene was false.

¶ 15    The trial court summarily dismissed the petition, finding that it did not include affidavits of the witnesses' proposed testimony or explain their absence. Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    The Act allows a defendant to challenge his conviction or sentence for violations of his constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the court finds that the petition is either frivolous or patently without merit, it must dismiss the petition in a written order. *Id.; People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Our review is *de novo*. *Edwards*, 197 Ill. 2d at 247.

¶ 18    To succeed on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-pronged *Strickland* test: he or she must allege facts which demonstrate that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984); *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

¶ 19    Defendant contends that the trial court wrongly dismissed his petition on the ground that it did not include affidavits from the prospective witnesses. He maintains that the police report attached to the petition sufficiently supports his claim. We disagree. The police report did not meet the Act's requirement of evidentiary support for postconviction allegations at the first stage of review. To explain, we examine the relevant portion of the Act and the case law construing it.

¶ 20    Section 122-2 of the Act dictates the "Contents of [the] Petition." 735 ILCS 5/122-2 (West 2018). The section states in relevant part: "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 735 ILCS 5/122-2 (West 2018). The requirement of evidentiary support "serves two purposes." *People v. Allen*, 2015 IL 113135, ¶ 32. "First, it must contain a factual basis sufficient to show the

petition's allegations are capable of objective or independent corroboration." (Internal quotation marks omitted.) *Id.* "Second, it must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." (Internal quotation marks omitted.) *Id.*

¶ 21   The evidentiary requirement governs petitions even at the first stage of review. "[The] low threshold [for first-stage survival] does not excuse the *pro se* petitioner from providing factual support for his claims; he must supply sufficient factual basis to show the allegations in the petition are capable of objective or independent corroboration." (Internal quotation marks omitted.) *People v. Allen*, 2015 IL 113135, ¶ 24. "The legislature intended that the circuit court *at the first stage* would look to whether the petition alleges a constitutional deprivation and whether petitioner's proffered evidence substantially indicates the availability of admissible evidence in support of his claim, in a way that can be corroborated through later proceedings." (Emphasis added.) *Id.* ¶ 33. See *id.* ¶¶ 37, 48 (unnotarized statement from potential witness satisfied evidentiary requirement at the first stage); *People v. Collins*, 202 Ill. 2d 59, 66 (2002) (defendant's sworn verification did not satisfy evidentiary requirement at the first stage).

¶ 22   Two cases, *People v. Dupree*, 2018 IL 122307, and *People v. Thompkins*, 161 Ill. 2d 148 (1994), illustrate how to interpret and apply the evidentiary requirement to the type of claim defendant raises in his petition. The question of first impression for the court in *Dupree* was whether a postconviction claim of ineffectiveness based on a failure to investigate and call a witness necessarily requires an affidavit from that witness for support. *Dupree*, 2018 IL 122307, ¶¶ 32-33. The court held that an affidavit is not always required in such cases to fulfill the evidentiary requirement:

"[T]his court has always held that dismissal is proper when the record or other evidence attached to the petition does not support the petitioner's claim. In cases where a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to call a witness, an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary 'substantial showing' to support a claim of ineffective assistance. It may be true that in most cases where this type of claim is raised, without an affidavit, there can be no way to assess whether the proposed witness could have provided evidence that would have been helpful to the defense. However, to interpret our case law as requiring an affidavit in all instances where this type of claim is raised is simply incorrect." *Id.* ¶ 34.

¶ 23    The court then surveyed a number of cases, including *Thompkins*. In *Thompkins*, the petition contained the defendant's own affidavit that he was with two women at the time of the murder and that they could have provided him with an alibi. Thus, the supreme court knew the substance of the proposed testimony, but nevertheless affirmed the dismissal of the petition because the "defendant's failure to submit affidavits from the women themselves precluded [the court] from considering [the] issue further." *Thompkins*, 161 Ill. 2d at 163. In *Dupree*, the court elaborated that, in *Thompkins*, "what precluded [its] review was the fact that there was nothing in the record to support the defendant's assertion that counsel had not spoken to these women or that the women, if called at trial, would have testified that they were with [the defendant] at the pertinent time." *Dupree*, 2018 IL 122307, ¶ 36. The court further noted that the alibi claim "could not be taken as true because it ran counter to the evidence that was presented at trial." *Id.*[1] "Thus,

_____

[1] Based on its comments in summarizing the holdings of *Thompkins* and the other cases,

without affidavits from these two women, it was impossible to determine whether the failure to call these proposed witnesses was evidence of ineffective assistance or simply trial strategy." *Id.*

¶ 24     The court drew the following principles from *Thompkins* and the other cases:

"In all of the cases ***, the claims of ineffective assistance were based on counsel's failure to discover and introduce new witness testimony, *i.e.*, *new evidence*, which the defendants believed would have altered the outcome of their trials. Because the proposed witnesses that trial counsel allegedly failed to investigate or call to testify were generally the only source of this new evidence, without their affidavits, there was no proof that such evidence actually existed or that it would have been helpful to the defense. Where proof other than an affidavit was offered to show what the proposed witness would have testified, we considered that evidence and determined it was insufficient to make a substantial showing of ineffective assistance." (Emphasis in original.)  *Id.* ¶ 40.

¶ 25     The *Dupree* court then contrasted the facts before it from those in *Thompkins* and the other cases.  The trial court in *Dupree* dismissed at the second stage the defendant's petition alleging that trial counsel was ineffective for failing call the robbery victim, Morrison, to testify at trial. The defendant did not provide an affidavit from Morrison but instead attached "three signed, handwritten statements that Morrison had given to the police in the course of their investigation of the robbery, as well as the police summary reports of their questioning of Morrison."  *Id.* ¶ 19. "These documents showed that Morrison reported the robbery to police shortly after it occurred and, in the course of the investigation, gave the police three different versions of how the robbery

_____

the *Dupree* court believed that the absence of affidavits in *Thompkins* would have doomed the defendant's claim regardless of whether the defendant's allegations conflicted with the record.

occurred." *Id.* The defendant claimed that counsel was ineffective specifically because counsel's failure to call Morrison as a witness prevented counsel from bringing this exculpatory evidence to the attention of the jury. *Id.* ¶ 41.

¶ 26     The *Dupree* court distinguished *Thompkins* and the other cases as follows:

"Thus, in this case, unlike the typical case, defendant did not hope to introduce new evidence that could only be verified by an affidavit from the proposed witness. Instead, defendant wanted to introduce evidence that already existed: Morrison's statements to the police, Morrison's failure to identify defendant from photo lineups, and Morrison's identification of someone other than defendant as the gunman. All of this evidence was inadmissible hearsay unless Morrison testified. Under these circumstances, anything that Morrison might say if called to testify at an evidentiary hearing is irrelevant to defendant's claim. Consequently, under the facts of this case, an affidavit from Morrison was not necessary, and it was appropriate for defendant to support the allegation of ineffectiveness with portions of the record and exhibits." *Id.* ¶ 42.

¶ 27     Before applying *Dupree*'s principles here, we explain *why* they apply here, in an appeal from a *first*-stage dismissal, when *Dupree* involved a *second*-stage dismissal. The Act does not specify different content requirements for petitions at different stages. Section 122-2 provides the only requirements for content, and *Dupree* based its analysis entirely on that provision. The supreme court has affirmed that the evidentiary requirement applies at the first stage. See *Allen*, 2015 IL 113135, ¶¶ 24, 26; *Collins*, 202 Ill. 2d at 66. Thus, even at the first stage, the petition must supply enough evidentiary support to show that its allegations "are capable of objective or independent corroboration," and there must be "reasonable certainty" as to the "sources, character, and availability of the alleged evidence supporting the petition's allegations." (Internal quotation

marks omitted.) *Allen*, 2015 IL 113135, ¶ 32. *Dupree* applied the same essential standards though it did not use *Allen*'s exact verbiage. *Dupree* held that a postconviction claim of ineffectiveness based on a failure to investigate and call a witness will fail if there is "no way to assess whether the proposed witness could have provided the evidence that would have been helpful to the defense." *Dupree*, 2018 IL 122307, ¶ 34. Further on in its analysis, *Dupree* clarified that if an ineffectiveness claim is based on "counsel's failure to discover and introduce new witness evidence," the defendant must establish *both* "that such evidence actually exist[s]" *and* "that it would have been helpful to the defense." *Id.* ¶ 40. If the proposed witness is "generally the only source of this new evidence," then the defendant must provide an affidavit from that witness. *Id.*

¶ 28    With these standards, *Dupree* was serving the same interests that *Allen* articulated as applying at the first stage of review: ensuring that the factual allegations of the petition are capable of corroboration and that it is reasonably certain that the alleged new evidence, in the form of witness testimony, is indeed available. Thus, *Dupree* approved of the holding in *Thompkins*, where the absence of affidavits from the alleged alibi witnesses was fatal because the court could not otherwise know if the witnesses would have testified as the defendant claimed. *Id.* ¶ 36 (citing *Thompkins*, 161 Ill. 2d at 163).

¶ 29    Applying these criteria, we note that this case is obviously closer to *Thompkins* than to *Dupree* itself. In *Dupree*, the defendant claimed that trial counsel was ineffective for not calling Morrison. However, the defendant wanted Morrison to testify not because of the substance of his testimony, but for the opportunity to bring hearsay documents to the attention of the jury. *Id.* ¶ 42. Thus, an affidavit from Morrison about his anticipated testimony was not necessary to support the defendant's claim.

¶ 30    Here, like the defendant in *Thompkins*, defendant alleged that trial counsel failed to investigate and call witnesses whose testimony was allegedly important because of its *substance*. As noted, *Dupree* appears to provide two distinct but related rationales for the requirement of evidentiary support in cases such as *Thompkins* and this one.  First, the defendant must reliably inform the court of the substance of the proposed testimony so that the court can decide whether it would have been "helpful to the defense."  *Id.* ¶ 34. Second, the defendant must establish that "the proposed witness could have provided" such evidence.  *Id.*

¶ 31    The first is arguably satisfied here.  We can glean from the police report the gist of what defendant wanted to prove: that Ponce and Rivera told the officers that they were riding bikes around the neighborhood at the time of the shooting and claimed to know nothing about it.  The second concern is problematic, however.  No supporting evidence shows that Rivera would actually have been able or willing to testify consistent with the report.  There is no indication that Rivera was still in the jurisdiction and subject to subpoena, that Woods's report accurately reflected his statement, or that Rivera remembered making the statement and would have been willing to so testify.  Similar concerns apply to the officers as well, with the further difficulty that the only relevant testimony they could have given based on the report was hearsay—merely repeating what Ponce and Rivera told them.

¶ 32    Lastly, we distinguish *Allen*, where the court held that a potential witness's unnotarized statement met the evidentiary requirement at the first stage of review.  See *Allen*, 2015 IL 113135, ¶¶ 37, 48.    The court reasoned that the lack of notarization "[did] not limit the *** statement's identification of the 'sources, character, and availability' of evidence alleged to support the petition, or destroy its ability to show that the petition's allegations are capable of independent corroboration."  *Id.* ¶ 34 (quoting *People v. Delton*, 227 Ill. 2d 247, 254 (2008)).  "It [was] enough

for first-stage purposes that the defendant *** provided substantive evidentiary content showing his claims are capable of corroboration and independent verification." *Id.* ¶ 37. The lack of notarization could be a basis for a second-stage challenge. *Id.* ¶ 35.

¶ 33 The obvious difference between this case and *Allen* is that the defendant in *Allen* provided a statement from the potential witness. The *Allen* court found that, despite the lack of notarization, the statement established with reasonable certainty the availability of the evidence. Here, without *any* statement (notarized or not) from the witnesses, we are not convinced of the availability of the evidence, *i.e.*, that the witnesses would have testified consistently with the police report.

¶ 34 Thus, while the absence of an affidavit is not automatically fatal to a defendant's postconviction claim, defendant's claim nevertheless fails because there is no evidence that defense counsel failed to investigate the witnesses or that any of them would have been willing or able to testify consistently with the report.

¶ 35 Because the lack of evidentiary support for the ineffectiveness claim was an adequate ground for dismissal, we do not reach the issue of whether trial counsel was ineffective for failing to call the witnesses.

¶ 36                                III. CONCLUSION

¶ 37 The judgment of the circuit court of Kane County is affirmed.

¶ 38 Affirmed.