2023 IL App (2d) 220159-U
No. 2-22-0159
Order filed July 18, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CF-2260 |
| JESSE ALVAREZ, | ) ) | Honorable Mark A. Pheanis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to show cause for bringing a successive postconviction petition; defendant could have brought his ineffectiveness claim in the initial petition and failed to explain why he could not obtain the affidavit for his initial petition.

¶ 2    Defendant, Jesse Alvarez, appeals from an order of the circuit court of Kane County denying his motion for leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). We affirm.

¶ 3                          I. BACKGROUND

¶ 4    Following a bench trial, defendant was convicted of five counts of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)). At trial, the victim, Alexander Carrera, testified that, on the night of July 1, 2009, he was standing outside his home on Valley Avenue in Aurora. Someone asked Carrera a question that he understood to be an inquiry about what gang he belonged to. The person then fired several gunshots, striking Carrera in his upper thigh and near his knee. Although Carrera identified defendant as the person who shot him, Carrera also indicated that defendant looked different than the shooter.

¶ 5    Samuel Sosa testified per an agreement with the State concerning, *inter alia*, the disposition of criminal charges he was facing in an unrelated matter. Sosa and defendant were members of the Latin Kings. Sometime before July 1, 2009, Sosa gave defendant a handgun  loaded with both regular ammunition and rounds with tiny pellets akin to shotgun ammunition. The gun was a "Nation gun," *i.e.*, available for use by members of the Latin Kings. A couple of days after July 1, 2009, defendant returned the gun to Sosa. Defendant told Sosa that he used the gun to shoot a "Maniac" in the leg. Defendant said that the shooting occurred on Valley Avenue. Sosa explained that the Maniac Latin Disciples and the Latin Kings are rival gangs.

¶ 6    Another member of the Latin Kings, Azael Ramirez, testified that defendant told him that he shot someone outside a house on Valley Avenue where some Maniac Latin Disciples were staying. Ramirez testified per an agreement with the State whereby he would receive a reduced sentence on a charge of attempted first-degree murder in an unrelated matter.

¶ 7    Sergio Cisneros testified that, on the day after the shooting, defendant told him that he had shot Carrera on Valley Avenue. At the time of trial, Cisneros no longer lived in Illinois. The State's Attorney's office paid for Cisneros's transportation and lodging so that he could testify. In addition, authorities quashed six outstanding warrants for Cisneros before his travel to Illinois.

¶ 8   Ebelio Ponce testified that he did not recall anything about the evening of July 1, 2009. The State then played a videotaped statement given by Ponce during an interview with police. In the statement, Ponce indicated that, on the night of the shooting, he and defendant's brother saw defendant walking toward Valley Avenue. Defendant was wearing gloves and holding one hand behind his back. A short time later, Ponce heard gunshots from the direction of Valley Avenue. On cross-examination, Ponce testified that he had not seen defendant on the night in question. His videotaped statement merely repeated "false information" others gave him.

¶ 9   The trial court found defendant guilty and sentenced him to a total of 88 years in prison. On direct appeal, defendant argued that the trial court erred in imposing consecutive sentences for certain counts. *People v. Alvarez*, 2016 IL App (2d) 140364, ¶ 16. We remanded for reconsideration of defendant's sentences. *Id.* ¶ 31. On remand, the trial court ordered all sentences to run concurrently, thereby reducing defendant's total prison term to 31 years.

¶ 10   Defendant subsequently filed a *pro se* postconviction petition claiming that trial counsel rendered ineffective assistance by failing to investigate and call as witnesses Roberto Rivera and Aurora police officers D. Woods and K. Ziman. The petition did not include affidavits from Rivera, Woods, or Ziman. However, defendant attached a police report from Woods indicating that, while Woods and Ziman were investigating the shooting of Carrera, Ponce and Rivera rode up on bicycles and asked what happened. Woods explained that there had been a shooting. Ponce and Rivera claimed to have no knowledge of the shooting. The trial court summarily dismissed the petition. See 725 ILCS 5/122-2.1(a)(2) (West 2018). We affirmed because defendant failed to attach affidavits from Rivera, Woods, and Ziman. *People v. Alvarez*, 2021 IL App (2d) 180947-U, ¶¶ 2, 33-34.

¶ 11    Through retained counsel, defendant subsequently moved for leave to file a successive postconviction petition, again claiming that trial counsel was ineffective for failing to investigate Rivera, Woods, and Ziman and call them to testify. The motion was accompanied by a proposed successive petition and an affidavit from Rivera, who averred as follows. Around the time of the July 1, 2009, shooting, Rivera, Ponce, and a third individual spoke to police officers near Carrera's house. Rivera told the police that they had not seen or heard anything. In August 2009, two police officers visited Rivera at his home. Rivera told the officers that he and Ponce had been at Carrera's house on the night of the shooting. At some point, Rivera and Ponce left to ride their bikes around the neighborhood. Rivera told the officers that he and Ponce did not see or hear anything related to the shooting.

¶ 12    In his motion for leave to file the successive petition, defendant alleged that, "prior to filing his original post-conviction petition, [he] was physically and materially unable to locate and contact Roberto Rivera. Defendant was incarcerated, indigent, and representing himself '*Pro Se*', which was the *cause* of his inability to obtain Roberto Rivera's affidavit." (Emphasis in original.)

¶ 13    Defendant's proposed successive petition also included a new claim: that defendant's 31-year prison sentence violated the proportionate-penalties clause of our state constitution (Ill. Const. 1970, art. I, § 11) because, on the date of the shooting, defendant was 19 years old and not a fully mature adult. The trial court denied the motion, and this appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant argues that the trial court erred in denying him leave to file a successive postconviction petition claiming ineffective assistance of counsel. Defendant does not claim any error as to the proportionate-penalties argument in his proposed petition.

¶ 16     We begin our analysis by summarizing the relevant principles governing proceedings under the Act. As our supreme court has explained:

"The Act [citation] provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding contains three stages. At the first stage, the [trial] court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' [Citation.] If the court makes this determination, the court must dismiss the petition in a written order. [Citation.] If the petition is not dismissed, the proceedings move to the second stage. [Citation.]

At the second stage, counsel is appointed to represent the defendant, if he is indigent [citation], and the State is permitted to file responsive pleadings [citation]. The [trial] court must determine at this stage whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the [trial] court conducts an evidentiary hearing [citation]." *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

¶ 17     Section 122-2 of the Act (725 ILCS 5/122-2 (West 2020)) provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations *or shall state why the same are not attached*." (Emphasis added.) The failure to attach such materials justifies summarily dismissing a petition at the first stage *unless* the petitioner explains their absence. See *People v. Delgado*, 2022 IL App (2d) 210008, ¶ 18 ("The trial court may *** summarily dismiss a petition if the defendant fails to either attach the necessary affidavits, records or other evidence, or explain their absence [citation] ***." (Internal quotation marks omitted)).

¶ 18    Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020) provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

¶ 19    Defendant maintains that his motion established both cause and prejudice and that he should have been granted leave to file a successive petition claiming that trial counsel was ineffective for failing to investigate Rivera and call him as a witness. We first consider defendant's argument that he had cause for failing to bring that ineffectiveness claim in his initial petition. In fact, defendant *did* raise the claim in his initial petition, but the claim was not supported by an affidavit from Rivera and was not considered on the merits. As noted, in his motion for leave to file the successive petition, defendant contended that before filing his initial petition, he could not locate or contact Rivera. According to defendant, his incarceration, indigence, and lack of counsel were "the *cause* of his inability to obtain Roberto Rivera's affidavit." (Emphasis in original.)

¶ 20    Defendant assumes that if circumstances prevented him from obtaining an affidavit from Rivera to include with his initial *pro se* petition, then he necessarily had "cause" under section 122-1(f) for failing to claim in his initial petition that trial counsel was ineffective for neglecting to investigate Rivera and call him to testify. In other words, defendant assumes that if he could not obtain Rivera's affidavit, he could not raise the ineffectiveness claim. The assumption is false

because the Act's affidavit requirement will be relaxed when the petition explains the failure to attach an affidavit. See *id.* § 122-2. For the sake of argument, let us assume that defendant's situation when he filed his initial petition—his incarceration, indigency, and lack of counsel— qualified as an objective factor that impeded his ability to obtain Rivera's affidavit. Were that the case, those same facts would have adequately explained defendant's failure to attach that affidavit to the initial petition. Nothing prevented defendant from reciting those facts in his initial petition. If he had done so, he could have avoided summary dismissal of the initial petition and obtained counsel to assist him in locating Rivera and obtaining his affidavit.

¶ 21    Because defendant failed to establish cause, he was not entitled to file a successive petition. Accordingly, we need not consider whether defendant established prejudice. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 32 ("[B]oth prongs [of the cause-and-prejudice test] must be met before leave to file a successive petition will be granted.").

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 24    Affirmed.